IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| RODNEY JOHNSON <br><br> Plaintiff, <br><br> vs. <br><br> OUTBACK STEAKHOUSE OF FLORIDA, LLC <br><br> Defendant. | Case No.: 3:25-cv-376 (RLB) <br><br><br><br> Mag. Judge: Richard L. Bourgeois |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S RULE
12(c) MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant OS Restaurant Services, LLC (wrongly identified as Outback Steakhouse of Florida, LLC) (hereinafter "Outback") submits this Memorandum in Support of its Rule 12(c) Motion for Judgment on the Pleadings seeking dismissal of claims by Plaintiff, Rodney Johnson, for failure to state a viable claim for relief.

**I.    PROCEDURAL POSTURE AND FACTUAL ALLEGATIONS**

On May 1, 2025, Johnson filed his Complaint and Demand for Jury Trial,[1] and then on June 17, 2025, he filed an Amended Complaint and Demand for Jury Trial ("Amended Complaint).[2] In both the original and Amended Complaints, Johnson has only asserted a claim under the Louisiana Whistleblower Act, La. R.S. 23:967 ("LWA").[3]

On September 2, 2025, Outback filed its Answer and Defenses to Plaintiff's First Amended Complaint.[4] This Court issued a Scheduling Order for Bench Trial and set a deadline of October

---

[1] Rec. Doc. 1.
[2] Rec. Doc. 10.
[3] Rec. Doc. 1; Rec. Doc. 10, ¶¶50-58.
[4] Rec. Doc. 13.

31, 2025 for the parties to amend the pleadings.[5] Having not filed any other complaints, Johnson's Amended Complaint remains the operative complaint.

From June 1, 2023, through May 1, 2024, Johnson worked at Outback's location off of South Acadian Thruway in Baton Rouge, Louisiana.[6] Johnson held the position of Front-of-House Key, in which job he managed the restaurant to ensure smooth operations.[7] Johnson reported to Brent Barney, who is alleged to have hiring and firing power over Johnson.[8]

Johnson alleges he observed his co-workers stealing money through a scheme by which a customer would pay their ticket in full, and afterwards the co-worker would use a manager card to issue a "comp" of a certain dollar amount (hereinafter the "'comp' scheme").[9] Johnson claims he began reporting the "comp" scheme in November or December of 2023 to Barney, but Barney never took any action.[10] Johnson says he nonetheless continued to report the alleged scheme by his co-workers, but that nothing was done to stop it.[11] Johnson alleges he ultimately reported the "comp" scheme in April of 2024 to Outback's corporate office.[12]

Afterwards, Johnson alleges Barney began criticizing his performance and finding fault in Johnson's job performance, which surprised Johnson because Barney supposedly had not criticized or disciplined Johnson prior to his reporting of the alleged "comp" scheme to Outback's corporate office.[13] Johnson claims his work schedule was cut, thereby reducing his pay, and that

---

[5] Rec. Doc. 19.
[6] Rec. Doc. 10, ¶¶ 15, 38.
[7] Rec. Doc. 10, ¶ 16.
[8] Rec. Doc. 10, ¶¶ 17-18.
[9] Rec. Doc. 10, ¶ 22.
[10] Rec. Doc. 10, ¶¶ 24-25.
[11] Rec. Doc. 10, ¶¶ 26-27.
[12] Rec. Doc. 10, ¶ 28.
[13] Rec. Doc. 10, ¶¶ 31-34.

ultimately his employment was terminated, and Johnson believes such actions were taken because he complained of his co-worker's alleged "comp" scheme.[14]

## II. LAW AND ARGUMENT

### A. Legal Standard for a Motion Under Rule 12(c)

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for judgment on the pleadings after the pleadings have been closed, but early enough not to delay trial. A motion under Rule 12(c) for judgment on the pleadings is subject to the same standards as a motion to dismiss under Rule 12(b)(6). *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 209 (5th Cir. 2010)). In this case, the pleadings are closed, as AHF has filed its Answer and Affirmative Defenses to Plaintiff's Petition.[15] This matter has been assigned for trial on February 10, 2025, and therefore, the instant motion has been filed early enough not to delay any trial proceedings.[16]

The Supreme Court has held that a court considering a motion to dismiss filed under Rule 12(b)(6) must determine if the factual allegations in the complaint raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007). The Supreme Court has further explained that to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. Although this plausibility standard is not a "probability requirement", it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Where a

---

[14] Rec. Doc. 10, ¶¶ 35-43.
[15] Rec. Doc. 10.
[16] Rec. Doc. 12.

plaintiff pleads facts that are "merely consistent with" liability, the plaintiff stops short of the line between possibility and plausibility of entitlement to relief. *Id*.

### B. Johnson's LWA Claim Should be Dismissed

Johnson's LWA claim fails in the following three regards: (1) the Amended Complaint fails to allege an actual violation of law; (2) the "comp" scheme at issue was conducted by rogue employees, whose actions are not attributable to Outback; and (3) the alleged "comp" scheme is not an "employment act or practice" that would implicate La. R.S. 23:967.

#### 1. Standards Under Revised Statute 23:967

Revised Statute 23:967(A), provides in pertinent part that "an employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law, discloses or threatens to disclose a workplace act or practice that is in violation of state law."

To state a claim for relief, a plaintiff must establish in the complaint that (1) the defendant violated state law through a prohibited workplace act or practice; (2) he advised the defendant of the violation of law; (3) he engaged in protected activity, i.e. disclosed, threatened to disclose, or objects to or refuses to participate in the employment act or practice that violates state law; and (4) he was fired as a result of his objection to, refusal to participate in the unlawful practice or threat to disclose the practice. *Lehman v. D'Albor*, No. 2:16 -CV-00783, 2016 WL 6465376, at *2 (W.D. La. Oct. 27, 2016); *Lee v. Hood Container of Louisiana, LLC*, No. CV 23-219-JWD-RLB, 2023 WL 7345945, at *2 (M.D. La. Nov. 7, 2023); *Lightell v. Walker*, 527 F. Supp. 3d 866, 891 (E.D. La. 2021) (citing *Hale v. Touro Infirmary*, 886 So.2d 1210, 1215 (La. App. 4 Cir. 11/3/04)).

The Louisiana "whistleblower statute is not triggered without a violation of state law." *Broussard v. Christus Health Sw. Louisiana*, 2024-491 (La. App. 3 Cir. 4/2/25); *Broussard v. Lafayette City-Par. Consol. Gov't*, 45 F. Supp. 3d 553, 581 (W.D. La. 2014)("For an employee to establish a claim under La. R.S. 23:967, she must prove that her employer committed an actual

4

violation of state law."); *Hale v. Touro Infirmary*, 2004-0003 (La. App. 4 Cir. 11/3/04), 886 So. 2d 1210, 1215.

The LWA "covers only serious violations committed by the employer, not illegal acts of a mere co-worker." *Ladd v. L. Enf't Dist. for Par. of Orleans*, 2022-0212 (La. App. 4 Cir. 10/5/22), 350 So. 3d 962, 967 (quoting *Goulas v. LaGreca*, 945 F. Supp. 2d 693, 703 (E.D. La. 2013)). Thus, in addition to showing an actual violation of state law, "the violation of state law must be a workplace act or practice that can be attributed to the employer rather than a rogue co-employee." *Sonnier v. Diversified Healthcare-Lake Charles, LLC*, 2022-420 (La. App. 3 Cir. 4/26/23), 364 So. 3d 1213, 1233. The unlawful "act or practice must be condoned by the employer, such that it can be attributed to the employer." *Id.; see also Zelenak v. Beauregard Elec. Coop. Inc.*, No. 2:24-CV-01803, 2025 WL 2025177, at *2 (W.D. La. July 18, 2025) and *Trautenberg v. Hutson*, No. CV 23-6525, 2025 WL 592777, at *2 (E.D. La. Feb. 24, 2025).

## 2.  Johnson's LWA Claim Suffers from Several Defects

In this matter, apart from alleging "theft," Johnson's Amended Complaint does not identify the specific law that is alleged to have been violated. Outback assumes Johnson is referring to simple theft under La. R.S. 14:67, [17] providing as follows in Subsection A:

---

[17] Outback propounded the following interrogatory upon Johnson:

> INTERROGATORY NO. 21: Please identify and with specificity any and all law(s) you believe that Outback violated that forms the basis of your claims.

In refusing to answer the interrogatory, Johnson submitted the following response:

> ANSWER: Plaintiff objects to this interrogatory on the grounds that it is overly broad, and to the extent that it seeks information protected by the attorney-client privilege, work product doctrine, or other applicable protections.

Undersigned counsel sought to have a conference pursuant to Rule 37 with Johnson's counsel. Undersigned counsel sent a Teams invite to opposing counsel for 1:30pm on February 25, 2026, to address the same, to which invite Johnson's counsel (Emanuel Kataev) marked it as "tentative" that he would appear. But, about an hour before the scheduled meeting, Mr. Kataev declined the invitation. Undersigned counsel reached out to Mr. Kataev about rescheduling the Rule 37 conference, but as of this submission has not received a response.

5

> Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.

Johnson's first problem in advancing an LWA claim is that his allegations have not demonstrated the elements of theft. Particularly, Johnson's Amended Complaint lacks allegations that the co-workers' actions were done without Outback's consent or that they engaged in fraudulent means via the "comp" scheme. While Johnson focuses on his co-worker's alleged "comp" scheme, it should not be forgotten that Outback would be the alleged victim in the scheme. Johnson's Alleged Complaint is replete with allegations that Johnson notified and warned his supervisor and the corporate office of his co-workers' scheme. Johnson alleges that Outback did nothing in response to curb his co-workers' behavior. The logical conclusion of Outback's inaction, and what Johnson seems not to consider, is that Outback saw no wrongdoing by Johnson's co-workers. In essence, there are no allegations to plausibly conclude that Outback did not consent to Johnson's co-workers' actions. Furthermore, Johnson's continual alerts to Outback management about the alleged scheme means that there was no fraud because there was no misrepresentation or suppression of the truth of what his co-workers were doing.[18] As it stands,

---

In advance of this motion, Outback has diligently tried to determine what law(s) Johnson believes were violated, but to no avail. Should Johnson identify in his opposition another or different state law that upon which he bases his claim, Outback prays that Johnson be denied from doing so and/or that Outback permitted to address the same via a reply to this motion.

[18] Outback notes that the Amended Complaint would not support a conclusion that his co-workers committed fraud, as there are no allegations of statements or representations made by the co-worker to anyone with Outback's management that misrepresent or suppress the truth of what they were doing. Should Johnson claim that he alleged fraud, the allegations in the Amended Complaint fail to satisfy Rule 9(b) of the Federal Rules of Civil Procedure requires "at a minimum, requires parties to plead the who, what, where, when, and how of the alleged fraud," as well as "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Budget Constr. Servs. LLC v. Victory Exteriors Roofing & Sheet Metal LLC*, 634 F. Supp. 3d 309, 312 (W.D. La. 2022) (citing *Colonial Oaks Assisted Living Lafayette, L.L.C. v. Hannie Dev., Inc.*, 972 F.3d 684, 689 (5th Cir. 2020) and *Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002)).

6

Johnson's allegations do not allege theft, and so do not allege an actual violation of law, such that the LWA claim cannot proceed.

The second problem with Johnson's LWA claim concerns the fact that he alleges rogue employees of Outback perpetrated the alleged "comp" scheme. On those grounds alone, the LWA does not apply. To save his claim, Johnson must point to allegations demonstrating that Outback condoned the rogue employee's theft, but therein lies the problem for Johnson – *i.e.* if Outback condoned its employees' taking of money, Outback therefor consented to the transfer of funds, which brings the matter back to preceding paragraph of there being no theft and no violation of law. Moreover, any argument by Johnson that Outback condoned the alleged "comp" scheme strains credulity, as that requires the leap that Outback would condone its employees stealing money from the company. So, either Johnson's Amended Complaint fails to allege an actual violation of law, or it fails to demonstrate that Outback condoned the alleged "comp" scheme of its employees.

The final problem with Johnson's LWA claim is that he does not allege an "employment act or practice" that violates the law. While Johnson's Amended Complaint notes that he objected to the "comp" scheme, the issue is whether the "comp" scheme is an employment act of practice. Civil Code Article 9 provides: "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." Under Civil Code Article 10, "the words of a law must be given their generally prevailing meaning." The cases arising under the LWA have not interpreted the phrase "employment act or practice." However, the legislature's placement of the word "employment" ahead "act or practice" indicates that its intent is to hold employer's accountable for only those actions done by employees within the course and scope of their

7

employment. Because Johnson alleges the "comp" scheme rises to the level of theft, which as a matter of law cannot be a part of any employee's job duties (*see La. C.C. art. 1971* requiring objects of contracts to be lawful), the "comp" scheme would not constitute as an "employment act or practice." Thus, on those additional grounds, Johnson's LWA claim cannot proceed.

III.    CONCLUSION

Johnson's claim has been illogical from the start. Not only has Johnson failed to sufficiently allege that his co-workers engaged in theft by way of the "comp" scheme, Johnson bases his claim on the actions of rogue employees that do not attribute back to Outback. Johnson also fails to allege that the "comp" scheme is an "employment act or practice," as that phrase is used in La. R.S. 23;967. Outback prays that this Court grants this Rule 12(c) Motion for Judgment on the Pleadings and dismiss Johnson's LWA claim with prejudice.

Respectfully submitted:

/s/ *Andrew J. Halverson*

Andrew J. Halverson, La. Bar. No. 31184
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Lafayette, LA 70508
Telephone: (337) 769-6582
Facsimile: (337) 989-0441
Email: Andrew.Halverson@ogletree.com


and

Makala L. Graves, La. Bar. No. 40608
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
701 Poydras Street, Suite 3500
New Orleans, LA 70139
Telephone: 504-648-2612
Facsimile: 504-648-3859
Email: Makala.graves@ogletree.com

*Attorneys for Defendant OS Restaurant Services, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing document has this date been served to all known counsel of record in this proceeding by:

| | | | | | |
|---|---|---|---|---|---|
| ( ) | Hand Delivery | | ( ) | | Prepaid U.S. Mail |
| ( ) | Facsimile | | ( ) | | Federal Express |
| ( ) | E-Mail | | ( X ) | | CM/ECF System |

Lafayette, Louisiana, this 4th day of March, 2026.

                                          */s/ Andrew J. Halverson*

                                          Andrew J. Halverson