**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA**

RODNEY JOHNSON,

                    Plaintiff,

    vs.

OUTBACK STEAKHOUSE OF FLORIDA, LLC,

                    Defendant.

Case No.: 3:25-cv-376 (BAJ) (RLB)

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS**

## PRELIMINARY STATEMENT

Plaintiff Rodney Johnson ("Johnson" or "Plaintiff"), by and through his attorneys, respectfully submits the instant memorandum of law in opposition to Defendant Outback Steakhouse of Florida, LLC's ("Outback" or "Defendant") motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) (hereinafter "Rule" or the "Rules").

## FACTS AND PROCEDURAL HISTORY

Plaintiff respectfully refers the Court to the Complaint for the relevant facts, which are deemed true for purposes of the instant motion. See ECF Docket Entry 1.

On June 17, 2025, Plaintiff amended his Complaint to provide the citizenship of Plaintiff and Outback, per this Court's Order dated May 23, 2025. See ECF Docket Entries 6 and 10.

## LEGAL STANDARD

"The standard for deciding a Rule 12(c) motion is the same standard used for deciding motions to dismiss pursuant to Rule 12(b)(6). […] The court must accept the well-pleaded facts as true and view them in the light most favorable to the plaintiff." See Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co., 29 F.4th 252, 256 (5th Cir. 2022) (citing In re Katrina Canal

Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007); Guidry v. Am. Pub. Life Ins. Co., 512 F.3d

177, 180 (5th Cir. 2007)).

Under this standard, Plaintiff need not prove his case; he need only allege sufficient facts

"enough to raise a right to relief above the speculative level," thus allowing the Court to draw a

"reasonable inference" of liability. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007));

see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In doing so, the court accepts all well-pleaded

facts as true and views those facts in the light most favorable to the plaintiff. See Gonzalez v. Kay,

577 F.3d 600, 603 (5th Cir. 2009) (citing Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th

Cir.2008)).

As argued below, Plaintiff has adequately pled all claims under this standard.

## LEGAL ARGUMENT

### A. Plaintiff's Claim under the Louisiana Whistleblower Act ("LWA") is Adequately Pled

### 1. The Amended Complaint Adequately States a Violation of Law

Plaintiff adopts Defendant's representation both that the LWA provides in pertinent part

that "[a]n employer shall not take reprisal against an employee who in good faith, and after

advising the employer of the violation of law […] [o]bjects to or refuses to participate in an

employment act or practice that is in violation of law,"[1] and that "[t]o state a claim for relief, a

plaintiff must establish in the complaint that (1) the defendant violated state law through a

prohibited workplace act or practice; (2) he advised the defendant of the violation of law; (3) he

engaged in protected activity, i.e. disclosed, threatened to disclose, or objects to or refuses to

participate in the employment act or practice that violates state law; and (4) he was fired as a result

---

[1] Defendant miscites to La. Rev. Stat. Ann. § 23:967(1), which provides "[d]iscloses or threatens to disclose a workplace act or practice that is in violation of state law."

2

of his objection to, refusal to participate in the unlawful practice or threat to disclose the practice." See ECF Docket Entry 21-1 at 4; La. Rev. Stat. Ann. § 23:967(3); Lehman v. D'Albor, No. 2:16-CV-00783, 2016 WL 6465376, at *2 (W.D. La. Oct. 27, 2016); Lee v. Hood Container of Louisiana, LLC, No. CV 23-219-JWD-RLB, 2023 WL 7345945, at *1 (M.D. La. Nov. 7, 2023); Lightell v. Walker, 527 F. Supp. 3d 866, 892 (E.D. La. 2021); Hale v. Touro Infirmary, 886 So.2d 1210, 1211 n.2 (La. App. 4 Cir. 11/3/04).

Plaintiff further adopts Defendant's representation that "[the LWA] is not triggered without a violation of state law'" See ECF Docket Entry 21-1 at 4, citing Broussard v. Christus Health Sw. La., 24-491 ( La. App. 3 Cir 04/02/25), 408 So. 3d 1161, 1169; Broussard v. Lafayette City-Par. Consol. Gov't, 45 F. Supp. 3d 553, 581 (W.D. La. 2014) ("'For an employee to establish a claim under La. R.S. 23:967, she must prove that her employer committed an actual violation of state law'" [internal citations omitted]); Hale, 886 So. 2d at 1215.

Plaintiff respectfully adds that "'[the LWA] targets serious employer conduct that violates the law.'" See Goulas v. LaGreca, 945 F. Supp. 2d 693, 702 (E.D. La. 2013), aff'd sub nom. Goulas v. LaGreca Servs., Inc., 557 Fed. Appx. 337 (5th Cir. 2014) (citing Stevenson v. Williamson, 547 F.Supp.2d 544 (M.D.La.2008), aff'd, 324 Fed. Appx. 422 (5th Cir.2009)).

Here, Plaintiff has adequately pled the elements of its LWA claim.

*First*, the Defendant violated state law through its "comp" scheme, representing theft under Louisiana state law.

*Second*, Plaintiff informed Outback that such violations of law were occurring. See ECF Docket Entry 10 ¶¶ 23-24, 26, 28.

*Third*, Plaintiff clearly objected to such violations on these same occasions. Id.

3

*Fourth*, Plaintiff was terminated only one (1) month following his direct complaint of illegal activity in the workplace to Defendant's corporate office, despite previous exceptional performance, as exemplified by his positive performance review, raise, and consistently high internal satisfactions scores for the restaurant. Id. at ¶¶ 38, 19-21.

Plaintiff diverges from Defendant's representation that the illegal acts complained of by him were not indicative of violations by Outback, or of violations of law at all.  Common sense dictates that the conduct complained of plainly falls within the confines of the LWA.

### 1. The Scheme at Issue is Attributable to Outback

Generally, employer liability can be based on the actions of subordinate employees. Under Louisiana state law principles of *respondeat superior*, "'masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.'" See Baumeister v. Plunkett, 95-2270 (La. 05/21/96), 673 So. 2d 994, 996 (citing Louisiana Civil Code article 2320).

"[I]n order for an employer to be vicariously liable for the tortious acts of its employee the 'tortious conduct of the [employee must be] so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interest.'" Id. (citing Barto v. Franchise Enterprises, Inc., 588 So. 2d 1353, 1356 (La. App. 2d Cir. 1991), *writ denied,* 591 So. 2d 708 (1992) (quoting LeBrane v. Lewis, 292 So. 2d 216, 217, 218 (La. 1974)); see also, e.g., Haire v. Bd. of Sup'rs of Louisiana State Univ. Agric. & Mech. Coll., 719 F.3d 356, 366 n. 11 (5th Cir. 2013) ("Under the cat's paw theory, a subordinate employee's discriminatory remarks regarding a co-worker can be attributed to the workplace superior, ultimately the one in charge of making employment decisions, when it

is shown that the subordinate influenced the superior's decision or thought process") (discussing liability under Title VII, in addition to the LWA).

Specific to the LWA, "[t]he act or practice must be condoned by the employer, such that it can be attributed to the employer." See Sonnier v. Diversified Healthcare-Lake Charles, LLC, 22-420 (La. App. 3 Cir 04/26/23), 364 So. 3d 1213, 1233. "'Employer' means a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee." See La. Rev. Stat. Ann. § 23:302(2).

The "right of control and supervision are equally important to the 'employer' analysis for a whistleblower claim." See Fultz v. New Orleans Reg'l Bus. Park, No. CV 16-2854, 2016 WL 5869789, at *4 (E.D. La. Oct. 7, 2016) ("In Ray, two appellate judges held that a local police chief, in addition to the municipality, qualified as the plaintiff's employer under § 23:967 because the police chief clearly had the right of control over the two plaintiffs, including the power to employ or terminate them from the police department") (citing Ray v. City of Bossier City, 37,708 (La. App. 2 Cir. 10/24/03), 859 So. 2d 264, 272–73, writ denied, 2003-3254 (La. 2/13/04), 867 So. 2d 697, and writ denied, 2003-3214 (La. 2/13/04), 867 So. 2d 697); see also Baumeister v. Plunkett, 95-2270 ( La. 05/21/96), 673 So. 2d 994, 996 ("in order for an employer to be vicariously liable for the tortious acts of its employee the "tortious conduct of the [employee must be] so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interest" (internal citations omitted)).

Here, Outback is liable under principles of *respondeat superior* because those involved in the "comp" scheme were acting within the ambit of their general duties of utilizing cash registers,

5

manager cards, and issuing comps. Moreover, as evidenced by Outback's acquiescence to employees' unlawful conduct following Johnson's reports, Outback condoned this conduct, and hence becomes liable. Indeed, and tellingly, an inference can be made from the complaint allegations that the very managerial employees who terminated Plaintiff following his complaints were "in on" the scheme of the thieving employees because they did nothing to stop the theft and instead terminated Plaintiff. Outback is unquestionably an employer, as it directed and controlled Plaintiff by giving him work, and in return, paid him compensation.

As argued herein, it is evident that at least some employees involved in the scheme at issue had control and/or supervision over Plaintiff. For example, it can be reasonably inferred from the complaint allegations that some of these employees assigned Plaintiff's shifts or daily tasks, approved or denied time off, evaluated Plaintiff's performance, had authority to issue or participate in discipline or termination decisions, trained Plaintiff, oversaw onboarding, directed Plaintiff's work on a day-to-day basis, controlled access to systems Plaintiff needed, supervised the specific department/area Plaintiff worked in, and/or had seniority or "lead" roles (shift lead, team lead, etc). See ECF Docket Entry 10 ¶¶ 18 ("Barney was employed by Defendant as a Manager and held a supervisory role over Plaintiff, including, *inter alia*, hiring/firing power"), 19 (Plaintiff "received a positive performance review and a raise during his tenure"), 24-28 (Plaintiff reported the scheme to Barney and then to Defendant's corporate office, to employees who ultimately did nothing), 31-34 (Barney became "overly critical of Plaintiff's performance" following Plaintiff's reporting), 35 (Barney limited Plaintiff's working hours), 38 (Plaintiff was ultimately terminated). Regardless of control and/or supervision, the employees involved in the "comp" scheme conducted same in close connection to their employment duties. For example, the scheme involved employees using the cash register and manager cards used in their ordinary course of employment.

6

This conduct therefore falls squarely within the LWA.

Moreover, whether Outback condoned or failed to act following Johnson's objections to the scheme is a question of fact, inappropriate for judgment on the pleadings. See Waller v. Hanlon, 922 F.3d 590, 600 (5th Cir. 2019) ("at the pleadings stage[,] allegations need 'not conclusively establish' the plaintiffs' theory of the case. […]  For now, it suffices that the plaintiffs' allegations 'are not "naked assertions devoid of further factual enhancement"'" [internal citations omitted]).

## 2.  The Scheme Represents a Violation of State Law

Plaintiff confirms that the law he is alleging has been violated is theft under La. R.S. § 14:67, but maintains that the elements have been sufficiently pled.[2] Defendant conflates Outback's knowledge of fraud after the fact with employee fraud at the time of the act. Regardless of Outback's later turning a blind eye post-Johnson reporting employees' conduct, the fact remains that employees who participated in the scheme were committing fraud without Outback's consent, at the times of their misappropriation of comps and manager cards.  More importantly, the well-pled allegations assert that Defendant *knew* of the unlawful conduct, and Defendant's denials of same are inappropriate at this stage of the case.

Effectively, Defendant's second argument is circular. The crime does not have to be a crime that Outback objected to; it just has to be a crime.  If it was not a crime, why did they fire him without addressing his complaints?  The complaint pleads no such events to warrant a finding that there was no criminal activity.   Accordingly, Plaintiff states a claim for relief under the LWA and this argument is meritless.

---

[2] "Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential." See La. Rev. Stat. Ann. § 14:67.

**3.  The Scheme is an "employment act or practice" that implicates La. R.S. 23:967**

The purpose of the LWA is to protect employees who report employment acts or practices that are in violation of law. See La. Rev. Stat. Ann. § 23:967. This, by nature, encompasses acts which are illegal and hence cannot be part of any employee's job duties. See Sonnier, 364 So. 3d at 1233 (forging records was a workplace act or practice for LWA purposes).

*First*, Defendant conflates civil fraud with criminal theft.  Plaintiff has no obligation to provide any civil fraud, only that a crime has occurred, which – for the reasons discussed *supra* – he has.

Moreover, Defendant's argument that this still must encompass actions done within the course and scope of their employment is equally ineffective, because, as discussed *supra*, employees' misappropriation of the cash register, manager cards, and fraud via "comp" scheme (performed using the typically lawful "comp" system) involves the manipulation of mechanisms which fall squarely within the scope of their employment overall. Critically, the very use of the "comp" system is tantamount to an employment practice because that system is used in the course of employment.

Although theft does not appear to be a serious violation to Outback – as evidenced by their decision to terminate Plaintiff, rather than reward him for bringing this scheme to their attention – it carries significant criminal penalties under Louisiana law. These penalties can include fines of up to fifty thousand dollars and imprisonment at hard labor for more than twenty years. See La. Rev. Stat. Ann. § 14:67(A)(1). It is therefore serious by the very nature of the repercussions faced by any such criminal defendant.

It follows that Defendant's assumption about *simple* theft is subject to discovery in this case, and is thus inappropriate to address in this motion.

**CONCLUSION**

District courts of Louisiana and Fifth Circuit courts have rejected similar motions to Defendant's instant motion. See Herster v. Board of Supervisors of Louisiana State University, 3:13-cv-00139, (M.D. La.), ECF Docket Entry 24 (LWA claim against employer permitted to stand); Wilcox v. Lotte Chemical USA Corp, 2:24-cv-01309, (W.D. La.), ECF Docket Entry 14-15; O'Steen v. Valero Refining-Meraux LLC, 2:18-cv-08209, (E.D. La.), ECF Docket Entry 43.

For all the foregoing reasons, Defendant's motion for judgment on the pleadings should similarly be denied. Plaintiff's Amended Complaint should be allowed to proceed in its entirety. In the unlikely event of dismissal, leave to replead should be granted.  See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002).

Dated: Jamaica, New York
        March 25, 2026                                    Respectfully submitted,

                                                          */s/ David S. Moyer, Esq.*
                                                          David S. Moyer, Esq.
                                                          **LAW OFFICES OF DAVID S. MOYER**
                                                          13551 River Road
                                                          Luling, LA 70070
                                                          (985) 308-1509
                                                          (985) 308-1521
                                                          davidmoyerlaw@gmail.com

                                                          */s/ Emanuel Kataev, Esq.*
                                                          Emanuel Kataev, Esq.
                                                          *Admitted pro hac vice*
                                                          **CONSUMER ATTORNEYS PLLC**
                                                          6829 Main Street
                                                          Flushing, NY 11367-1305
                                                          (718) 412-2421 (office)
                                                          (718) 489-4155 (facsimile)
                                                          ekataev@consumerattorneys.com

                                                          *Attorneys for Plaintiff*
                                                          *Rodney Johnson*

9