**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **RODNEY JOHNSON** | * | **DOCKET NUMBER: 3:25-cv-376 (RLB)** |
| | * | |
| | * | **MAGISTRATE JUDGE** |
| **VERSUS** | * | **RICHARD L. BOURGEOIS** |
| | * | |
| **OUTBACK STEAKHOUSE OF** | * | |
| **FLORIDA, LLC** | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

<u>**MEMORANDUM IN SUPPORT OF**</u>
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

Respectfully submitted:

/s/ *Andrew J. Halverson* __

Andrew J. Halverson, La. Bar. No. 31184
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Lafayette, LA 70508
Telephone: (337) 769-6582
Facsimile: (337) 989-0441
Email: Andrew.Halverson@ogletree.com


and

Makala L. Graves, La. Bar. No. 40608
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
701 Poydras Street, Suite 3500
New Orleans, LA 70139
Telephone: 504-648-2612
Facsimile: 504-648-3859
Email: Makala.graves@ogletree.com

*Attorneys for Defendant OS Restaurant Services, LLC*

TABLE OF CONTENTS

I.      SUMMARY OF THE ARGUMENT ........................................................................ 1

II.     BACKGROUND ...................................................................................................... 2

        A.      Johnson's Job Duties and Performance Issues Leading to His
                Termination ................................................................................................... 2

        B.      Johnson's Untimely Report and Allegations of Harassment and
                Theft .............................................................................................................. 4

III.    SUMMARY JUDGMENT STANDARD ................................................................. 6

IV.     JOHNSON'S LWA CLAIM CANNOT SURVIVE SUMMARY
        JUDGMENT ............................................................................................................. 7

        A.      Standards Under La. R.S. 23:967 ................................................................. 8

        B.      Johnson Cannot Prove an Actual Violation of Law by Outback .................... 9

                1.      Johnson Does Not Allege Outback Took Property
                        Belonging to Another ...................................................................... 10

                2.      Johnson's Testimony Concerning Misappropriation,
                        Taking, Consent, and Fraud ............................................................. 11

        C.      Johnson Did Not Engage in Protected Activity ........................................... 12

        D.      Johnson Cannot Establish Causation ........................................................... 13

        E.      The Alleged Unauthorized Theft by Employees is Not an
                Employment Act or Practice ....................................................................... 15

V.      CONCLUSION ....................................................................................................... 17

# Table of Authorities

**Cases**

*Anderson v. City of Bessemer City, N.C.*,
470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) ...................................................... 7

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 248, 106 S.Ct. 2505, 2510 91 L.Ed.2d 202 (1986) ............................................. 6

*Bellard v. Gautreaux*,
675 F.3d 454, 460 (5th Cir. 2012) ........................................................................................... 7

*Broussard v. Christus Health Sw. Louisiana*,
2024-491 (La. App. 3 Cir. 4/2/25) .......................................................................................... 8

*Broussard v. Lafayette City-Par. Consol. Gov't*,
45 F. Supp. 3d 553, 581 (W.D. La. 2014) ............................................................................... 8

*Causey v. Winn-Dixie Logistics, Inc.*,
2015-0813, p.4 (La. App. 1 Cir. 12/23/15), 186 So.3d 185 .................................................... 8

*Celotex Corp. v. Catrett*,
477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) .................................................... 6

*Cooper Indus., Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*,
876 F.3d 119, 128 (5th Cir. 2017) ........................................................................................... 6

*Cooper v. Wal-Mart Transp., LLC*,
662 F. Supp. 2d 757, 784 (S.D. Tex. 2009) ............................................................................. 7

*Dobyns v. Univ. of Louisiana Sys.*,
2018-0811 (La. App. 1 Cir. 4/12/19), 275 So. 3d 911 ...................................................... 13, 14

*Gautreau v. EnLink Midstream Operating GP, LLC,*
2021-0796 (La. App. 1 Cir. 5/25/22), 342 So. 3d 939 ........................................................ 9, 15

*Goring v. Bd. of Sup'rs of Louisiana State Univ.*,
932 F. Supp. 2d 642, 655–56 (M.D. La. 2010) ....................................................................... 13

*Hale v. Touro Infirmary*,
2004-0003 (La. App. 4 Cir. 11/3/04), 886 So. 2d 1210 ........................................................... 8

*In re Louisiana Crawfish Producers*,
852 F.3d 456, 462 (5th Cir. 2017) ........................................................................................... 7

*Ladd v. L. Enf't Dist. for Par. of Orleans*,
   2022-0212 (La. App. 4 Cir. 10/5/22), 350 So. 3d 962 ...................................................... 8

*Lee v. Hood Container of Louisiana, LLC*,
   No. CV 23-219-JWD-RLB, 2023 WL 7345945, at *1 (M.D. La. Nov. 7, 2023) ...................... 9

*Likens v. Hartford Life & Acc. Ins. Co.*,
   688 F.3d 197, 202 (5th Cir. 2012) ................................................................................. 7

*Sonnier v. Diversified Healthcare-Lake Charles, LLC*,
   2022-420 (La. App. 3 Cir. 4/26/23), 364 So. 3d 1213 ................................................... 8

*State in Int. of T.H.*,
   2014-179 (La. App. 3 Cir. 6/4/14), 140 So. 3d 911 ...................................................... 9

*State v. Heymann*,
   256 La. 18, 235 So. 2d 78 (1970) ................................................................................. 10

*State v. Victor*,
   368 So. 2d 711, 714 (La. 1979) ..................................................................................... 11

*Trautenberg v. Hutson*,
   No. CV 23-6525, 2025 WL 592777, at *2 (E.D. La. Feb. 24, 2025) ................................. 9

*Winfrey v. San Jacinto County*,
   481 Fed. Appx. 969, 974 (5th Cir. 2012) ....................................................................... 7

*Zelenak v. Beauregard Elec. Coop. Inc.*,
   No. 2:24-CV-01803, 2025 WL 2025177, at *2 (W.D. La. July 18, 2025) .......................... 9

**Statutes**

Civil Code Article 1468 ...................................................................................................... 10

Civil Code Article 1526 ...................................................................................................... 10

Civil Code Article 1527 ...................................................................................................... 10

Civil Code Article 1953 ...................................................................................................... 11

Fed. R. Civ. P. 56(c) .......................................................................................................... 6

La. R.S. 14:67 .................................................................................................................... 9

La. R.S. 23:967 .............................................................................................................. 7, 13

iv

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

RODNEY JOHNSON                 *       **DOCKET NUMBER: 3:25-cv-376 (RLB)**
                                      *
                                        *       **MAGISTRATE JUDGE**
**VERSUS**                             *       **RICHARD L. BOURGEOIS**
                                        *
**OUTBACK STEAKHOUSE OF**     *
**FLORIDA, LLC**                   *
**************************************************************************

## MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

OS Restaurant Services, LLC (wrongly identified as Outback Steakhouse of Florida, LLC) (hereinafter "Outback") submits this Memorandum in Support of Motion for Summary Judgment. Plaintiff Rodney Johnson ("Johnson") has no avenue for relief, and Outback requests dismissal of Johnson's claims accordingly.

### I.      Summary of the Argument

Johnson asserts a state law whistleblower claim under Revised Statute 23:967 ("LWA claim"). Johnson claims servers at Outback utilized a manager's comp card and gift cards (called Tuck Away cards) to reduce their bill to offset a bad tip. Johnson also claims that the servers acted with the co-owner's knowledge, consent and approval. In this regard, Johnson claims that the servers committed theft and that such theft is attributable to Outback because the co-owner condoned the servers' conduct. Johnson claims he was fired in violation of the LWA for attempting to report the same.

Johson's claim is logically flawed, because even if he is correct, he still loses. On the one hand, if Johnson is right that the servers acted with the owner's consent and that the servers' conduct is attributable to Outback, as Johnson claims through his testimony but which Outback denies and disputes, there would be no theft because: (1) the result would be that Outback stole its

1

own money, rather than the property of another; and (2) Outback would have consented to the servers' conduct. In essence, Johnson being right precludes his ability to establish essential elements of the crime of theft, which further prevents him from demonstrating an actual violation of state law. On the other hand, Outback maintains that it did not condone the servers' conduct. In that regard, the servers' actions amount to that of rogue employees not attributable to Outback, which thereby means that the use of comp cards and Tuck Away cards were not an "employment act or practice" that would implicate the protections and remedies of the LWA. Either way, Johnson's LWA claim cannot survive summary judgment.

Johnson's LWA claim faces other insurmountable hurdles, including Johnson's failure to alert Outback of the alleged theft prior to his termination and failure to show his report of theft resulted in or caused his termination.

Outback prays that its Motion for Summary Judgment is granted and that Johnson's LWA claim is dismissed with prejudice.

## II.    Background

On July 31, 2023, Brent Barney ("Barney"), the proprietor of an Outback restaurant located on Acadian Thruway, hired Johnson to be the Front of the House Key ("Key") for the restaurant.[1] As a proprietor, Barney co-owns the Acadian location with Outback and serves as the restaurant's Managing Partner, akin to a General Manager.[2]

### A.  Johnson's Job Duties and Performance Issues Leading to His Termination

As a Key, Charging Party was responsible for overall restaurant management which included completing server table assignments, greeting and ensuring guest satisfaction, promoting

---

[1] Exhibit 1, Johnson Deposition 24:23-25:8, 122:16-124:24, 159:18-20; Exhibit 2, Barney Declaration.
[2] Exhibit 1, Johnson Deposition 159:18-25; Exhibit 2, Barney Declaration.

enrollment in Dine Rewards (customer loyalty program), and assisting employees where needed, such as bringing food items to tables or assisting with host duties by seating guests during busy periods.[3]

Throughout Johnson's employment, Barney and other managers routinely observed Johnson failing to meet performance expectations.[4] Specifically, he failed to actively promote Outback's Dine Rewards and did not demonstrate that he was a team player willing to assist employees during peak times.[5] For example, Johnson was observed using his personal computer for non-work-related tasks while guests required attention.[6] In response and on multiple occasions, Barney verbally counseled Johnson regarding his lack of productivity and teamwork.[7]

In April 2024, Outback's Regional Manager, Dale Rockett ("Rockett"), met and spoke with Johnson for about an hour regarding Barney's expectations being too high.[8] Rockett clarified that it was Barney's responsibility to set expectations and hold employees accountable for unsatisfactory performance.[9] At no point did Johnson raise concerns to Rockett or Barney about theft at the restaurant.[10]

On May 1, 2024, Barney received a report that Johnson instructed guests to leave him a positive Google review and to claim that the server "sucked."[11] Based upon that inappropriate

---

[3] Exhibit 1, Johnson Deposition 123:5-25; Exhibit 2, Barney Declaration.

[4] Exhibit 2, Barney Declaration.

[5] Exhibit 2, Barney Declaration.

[6] Exhibit 2, Barney Declaration.

[7] Exhibit 1, Johnson Deposition 137:10-139:7, 147:24-148:10, 152:23-157:18, 158:5-24; Exhibit 2, Barney Declaration.

[8] Exhibit 3, Employee Relations Case: US-2024-9909, *see* section titled "Case Notes".

[9] Exhibit 3, Employee Relations Case: US-2024-9909, *see* section titled "Case Notes".

[10] Exhibit 2, Barney Declaration; Exhibit 3, Employee Relations Case: US-2024-9909, *see* section titled "Case Notes"

[11] Exhibit 2, Barney Declaration.

behavior, coupled with ongoing issues with Johnson's performance, Barney immediately terminated Johnson's employment.[12]

### B. Johnson's Untimely Report and Allegations of Harassment and Theft

On May 2, 2024, the day following his termination, Johnson filed a complaint with Outback's Employee Relations department ("ER Department").[13] Johnson claimed that he had previously filed a report on April 1, 2024, of allegations of harassment and theft occurring at the restaurant, and that he was fired after he (i) denied a server use of his key card to comp food off and (ii) asked Barney for Rockett's contact information, so that he could report the harassment and theft that he believes was going on.[14]

On May 6, 2024, Johnson submitted a second complaint with Outback's ER Department to allege that he had been experiencing harassment and a hostile work environment from Barney and the Front of the House Manager, Joceline Silva ("Silva"), since September 2023.[15] Johnson also claimed that, after his alleged April 1, 2024 report, Silva retaliated against him by cutting his hours from 36 to 40 hours to approximately 20 hours a week.[16]

Outback investigated and could not corroborate any of Johnson's claims. First, Outback has no record of Johnson submitting a complaint any time in April of 2024.[17] Second, Johnson's pay records show that he worked the same amount – 27.50 hours per week – in April of 2024 as

---

[12] Exhibit 2, Barney Declaration.

[13] Exhibit 3, Employee Relations Case: US-2024-9909.

[14] Exhibit 3, Employee Relations Case: US-2024-9909, section titled "Case Details"; Exhibit 1, Johnson Deposition 252:6-22.

[15] Exhibit 1, Johnson Deposition 159:8-17; Exhibit 4, Employee Relations Case: US-2024-9937, section titled "Case Details."

[16] Exhibit 4, Employee Relations Case: US-2024-9937, section titled "Case Details."

[17] Exhibit 3, Employee Relations Case: US-2024-9909, section titled "Synopsis"; Exhibit 4, Employee Relations Case: US-2024-9937, sections titled "Synopsis" and "Case Notes."

he had for the previous six months, dating back to November of 2023.[18] Third, as to allegations of harassment, Rockett met with Johnson in April of 2024 to discuss Johnson's belief that Barney is "always on him" and that if Johnson stops in the kitchen, Barney will redirect him back to the dining room.[19] In that meeting, Johnson agreed that it was Barney's restaurant, and Rockett advised that Barney's job is to direct people, to which Johnson acknowledged that Barney does the same with other employees.[20]

Regarding theft, while Johnson mentions it in his complaints to the ER Department on May 2 and 7, 2024, the complaints lack details as to how the alleged theft occurred.[21] In his deposition, Johnson describes the theft as being perpetrated mainly by two servers, Danielle and Renee, who used Barney's comp card and used "Tuck Away Cards" (similar to gift cards) to reduce a ticket after a customer paid and then kept those deductions.[22] Barney denies the scheme Johnson describes and denies that there was any improper use of his comp card or Tuck Away Cards.[23]

Nonetheless, Johnson repeatedly testified and confirmed under his theory that there was no theft by Outback or any of its employees, by way of the following: (i) Barney and Silva were aware of and permitted the practice for all of the servers, not just Danielle and Renee, to offset a bad

---

[18] Exhibit 5, Johnson's Pay Records.  From July 2023 through September 2023, Johnson's schedule fluctuated between 32.50 and 35 hours per week. Such fluctuations and the decrease to 27.50 hours per week in November 2023 are not a part of this case, since they pre-date his alleged report about theft. However, in the event Johnson does so in response to this motion, Outback notes that, in addition to the bases discussed in this motion, prescription would have accrued on an LWA claims based upon pay fluctuations between July 2023 and November 2023, as Johnson filed his claim more than a year later, on May 1, 2025. *See Clark v. Auger Servs., Inc.*, 443 F. Supp. 3d 685, 712 (M.D. La. 2020) (Claims under La. R.S. 23:967 are "subject to the general one-year prescriptive period for delictual actions provided La. C.C. art. 3492.").

[19] Exhibit 3, Employee Relations Case: US-2024-9909, section titled "Case Notes."

[20] Exhibit 3, Employee Relations Case: US-2024-9909, section titled "Case Notes."

[21] Exhibit 3, Employee Relations Case: US-2024-9909; Exhibit 4, Employee Relations Case: US-2024-9937.

[22] Exhibit 1, Johnson Deposition 38:4-25, 51:19-52:12, 58:18-23.

[23] Exhibit 2, Barney Declaration.

tip;[24] (ii) Barney gave Danielle and Renee his comp card to use;[25] and (iii) Barney and Silva gave Tuck Away cards to Danielle, Renee and all of the servers to use.[26]

## III.    Summary Judgment Standard

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the plaintiff cannot support each essential element of his claim, summary judgment must be granted on that claim because a complete absence of evidence regarding an essential element necessarily renders other facts immaterial. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Cooper Indus., Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 876 F.3d 119, 128 (5th Cir. 2017) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id. (*citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252). This means that a party cannot survive summary judgment with just "a scintilla of evidence" in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 91 L.Ed.2d 202 (1986).

Although courts view the evidence in the light most favorable to the non-movant, the non-movant must still "come forward with specific facts indicating a genuine issue for trial." *Cooper, 876 F.3d at 128.* Only when there is sufficient evidence favoring the nonmoving party for a jury

---

[24] Exhibit 1, Johnson Deposition 39:14-45:5; 47:23-49:20, 51:9-52:18, 269:16-270:11.

[25] Exhibit 1, Johnson Deposition 38:10-14; 53:4-17, 261:9-262:2.

[26] Exhibit 1, Johnson Deposition 45:8-46:6, 262:3-10.

to return a verdict for that party is a full trial on the merits warranted. *In re Louisiana Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017).

"[O]n a motion for summary judgment, the evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial." *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012). A plaintiff's own self-serving, conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the non-movant's burden of proving discrimination. *Id.*; *Likens v. Hartford Life & Acc. Ins. Co.*, 688 F.3d 197, 202 (5th Cir. 2012); *Winfrey v. San Jacinto County*, 481 Fed. Appx. 969, 974 (5th Cir. 2012). Finally, a "court may disregard testimony and render judgment as a matter of law when no reasonable jury could find the testimony credible." *Cooper v. Wal-Mart Transp., LLC*, 662 F. Supp. 2d 757, 784 (S.D. Tex. 2009) (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)) ("[F]actors other than demeanor and inflection go into the decision whether or not to believe a witness. Documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it.").

## IV.    Johnson's LWA Claim Cannot Survive Summary Judgment

Johnson's LWA claim suffers from several fatal flaws, any one of which warrants dismissal: (1) Johnson cannot establish Outback committed theft; (2) Johnson did not engage in protected activity prior to his termination; (3) Johnson cannot establish causation between his termination and engagement in protected activity and (4) the alleged theft is not an "employment act or practice" that would implicate La. R.S. 23:967.

7

### A.      Standards Under La. R.S. 23:967

The LWA provides in pertinent part: An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law: … (3)  Objects to or refuses to participate in an employment act or practice that is in violation of law. *La. R.S. 23:967(A).*[27]

The LWA targets serious employer conduct that violates the law. *Causey v. Winn-Dixie Logistics, Inc.*, 2015-0813, p.4 (La. App. 1 Cir. 12/23/15), 186 So.3d 185, 187.

The Louisiana "whistleblower statute is not triggered without a violation of state law." *Broussard v. Christus Health Sw. Louisiana*, 2024-491 (La. App. 3 Cir. 4/2/25); *Broussard v. Lafayette City-Par. Consol. Gov't*, 45 F. Supp. 3d 553, 581 (W.D. La. 2014)("For an employee to establish a claim under La. R.S. 23:967, she must prove that her employer committed an actual violation of state law."); *Hale v. Touro Infirmary*, 2004-0003 (La. App. 4 Cir. 11/3/04), 886 So. 2d 1210, 1215.

The LWA "covers only serious violations committed by the employer, not illegal acts of a mere co-worker." *Ladd v. L. Enf't Dist. for Par. of Orleans*, 2022-0212 (La. App. 4 Cir. 10/5/22), 350 So. 3d 962, 967 (quoting *Goulas v. LaGreca*, 945 F. Supp. 2d 693, 703 (E.D. La. 2013)). Thus, in addition to showing an actual violation of state law, "the violation of state law must be a workplace act or practice that can be attributed to the employer rather than a rogue co-employee." *Sonnier v. Diversified Healthcare-Lake Charles, LLC*, 2022-420 (La. App. 3 Cir. 4/26/23), 364 So. 3d 1213, 1233. The unlawful "act or practice must be condoned by the employer, such that it can be attributed to the employer." *Id.; see also Zelenak v. Beauregard Elec. Coop. Inc.*, No. 2:24-

---

[27] Exhibit 1, Johnson Deposition 277:25-279:19.  By way of the foregoing testimony, Johnson acknowledges that he did not disclose or threaten to disclose a workplace act or practice in violation of state law and that he did not provide information to or testify a public body conducting an investigation, hearing or inquiry into any violation of law, such that Subsections A(1) and A(2) of Section 967 do not apply.

8

CV-01803, 2025 WL 2025177, at *2 (W.D. La. July 18, 2025) and *Trautenberg v. Hutson*, No. CV 23-6525, 2025 WL 592777, at *2 (E.D. La. Feb. 24, 2025).

A whistleblower must show he (1) realized his employer violated a Louisiana law; (2) advised the employer of the violation; (3) refused to participate in it; and (4) was fired because of the refusal. *Lee v. Hood Container of Louisiana, LLC*, No. CV 23-219-JWD-RLB, 2023 WL 7345945, at *1 (M.D. La. Nov. 7, 2023) (citing *Hale v. Touro Infirmary*, 886 So.2d 1210, 1216 (La. App. 4 Cir. 11/3/04). The statute requires "an actual violation of state law[.]" *Id.* (quoting *Accardo v. La. Health Servs. & Indem. Co.*, 943 So.2d 381, 387 (La. App. 1 Cir. 6/21/06)). A "good faith belief that a violation occurred is insufficient." *Gautreau v. EnLink Midstream Operating GP, LLC,* 2021-0796 (La. App. 1 Cir. 5/25/22), 342 So. 3d 939, 947.

**B.    Johnson Cannot Prove an Actual Violation of Law by Outback**

Johnson speaks of theft in his Amended Complaint and affirms in response to Outback's Rule 12(c) Motion for Judgment on the Pleadings that the state law Johnson contends Outback violated is La. R.S. 14:67,[28] which provides as follows in Subsection A:

> Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.

The essential elements of the crime of theft are: (1) The "misappropriation or taking of anything of value which belongs to another*,*" (2) Either "without the consent of the other ... or by means of fraudulent conduct," (3) With "intent to deprive the other permanently" of the object of the taking or misappropriation. *State in Int. of T.H.*, 2014-179 (La. App. 3 Cir. 6/4/14), 140 So. 3d 911, 926.

---

[28] R. Doc. 10; R. Doc. 22, p. 7.

Johnson cannot establish any of the elements of the crime, and specifically the following: (i) a "misappropriation" or a "taking," (ii) the lack of consent or the exercise of fraud; and (iii) property belonging to another person.

### 1.  Johnson Does Not Allege Outback Took Property Belonging to Another

"[T]he gist of offense of theft by fraud and misrepresentation is misappropriation or taking of money belonging to [another] by fraudulent conduct or representations." *State v. Heymann*, 256 La. 18, 235 So. 2d 78 (1970). Johnson does not claim that the servers overcharged the customers. Rather, the scheme Johnson alleges is that, if a server received a bad tip, after the customer paid the bill, servers used Barney's comp card or applied Tuck Away cards received from Barney to boost their tips. Thus, the property at issue in this case is money Johnson believes was taken from Outback. The legal theory implicated by the scheme Johnson describes does not involve theft, because Outback cannot steal its own property, but rather donations of its property, which are completely permissible under Louisiana's law on donation and provided by Civil Code Articles 1468, 1526, 1527.

Furthermore, even if it could be said that Outback took someone else's money, which Outback disputes and denies, Johnson has no evidence that theft even occurred. Outback denies that any server's check was improperly comped or that a Tuck Away card was improperly used to increase a server's tips or to offset any bad tips a server may have received.[29] Johnson admits that he has no evidence of the same, and Johnson specifically admits: (1) he has no evidence of any ticket where Barney's comp card was used, and (2) that he cannot identify what ticket the card was used.[30]

---

[29] Exhibit 2, Barney Declaration.
[30] Exhibit 1, Johnson Deposition 272:3-15.

Johnson's LWA claim should be dismissed because Johnson has no evidence to suggest that Outback took property belonging to another person.

### 2. Johnson's Testimony Concerning Misappropriation, Taking, Consent, and Fraud

The Louisiana Supreme Courts interpreted "misappropriation" and "taking" to respectively mean "wrongful dominion" and "unauthorized control of the property of another." *State v. Victor*, 368 So. 2d 711, 714 (La. 1979). Civil Code Article 1953 defines fraud as the "misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other."

As mentioned in Section II(B), Johnson repeatedly testified that he was aware that Barney gave his comp card to and/or allowed it to be used by, as well as gave Tuck Away cards to, servers when they had a bad table or to offset a bad tip.[31] Additionally, during his deposition, by way of the following exchange, Johnson discussed his belief regarding whether the servers acted with Barney's consent and whether Barney had authority to do what Johnson claims:

Q: What evidence do you have to support your contention, if you have the contention, that there was no consent to use the comp card?

A: ***I can't prove it, but, like I say, it wasn't like it was no consent. It was consent because he gave it to them.*** He gave -- it was given to them by him to use for those purposes so they can make tips and have -- and come out and leave with nice -- with a nice bit of tips.

Q: So do you believe that -- when you say he gave him -- them the comp card?

A: Brent gave them the comp card so they can leave with good tips at the end of the day.

Q: Brent gave Danielle and --

A: And Rened his comp card so they can leave at the end of the day with good tips.

---

[31] Exhibit 1, Johnson Deposition 38:10-14, 39:14-45:5; 45:8-46:6, 47:23-49:20, 51:9-52:18, 53:4-17, 261:9-262:10, 269:16-270:11.

Q:    And they would apply the same -- and Joslyn and Brent would do the same thing for other servers, just not to the same degree or amount, right?

A:    Yes.

Q:    Okay. **It seems what your whole idea is boiling down to is that you believe that Brent did not have that authority to do that; is that your belief or no**?

A:    *No, that's not my belief.* My belief is it was wrong.· It's not part of your -- of his – of his -- of his title to say, well, if you have a bad day -- a bad day of tips, I'm going to make it right for you and let -- and give you money that -- money that you didn't even really work for.· It was given to you.· If -- I just feel like -- like I told him, if they was to put in the effort and work for their tips, they can make tips.[32]

By way of the foregoing, particularly the end of the passage, what Johnson really finds objectionable is that servers allegedly received money without, in his belief, working for it. But that neither constitutes theft nor a crime of any sort.  As to the elements of theft, Johnson testifies that the servers acted with Barney's consent and that he does not believe that Barney lacked authority. Even if he belatedly claims in response to this motion that Barney acted without authority, such a claim would fail because it is undisputed that Barney co-owns and manages the Outback location where Johnson worked, which co-ownership and management gives Barney authority to make decisions – including unwise ones – on behalf of the business.

Because Johnson bases his claim on the belief that servers acted with Barney's consent, Johnson cannot demonstrate Outback actually violated state law by committing theft.

C.    **Johnson Did Not Engage in Protected Activity**

The LWA provides that an employee engages in protected activity by: (1) first advising the employer of the violation of law before the employer retaliates against the employee, and (2) then doing one of the following: (a) disclosing or threatening to disclose the violation of state law; (b)

---

[32] Exhibit 1, Johnson Deposition 269:16-271:2 (emphasis added).

12

providing information or testimony to a public body investigating the violation of law; or (c) objecting to or refusing to participate in the employment act in violation of law. *La. R.S. 23:967(A)*. Johnson claims he objected to servers using the comp card or Tuck Away cards and/or refused to allow servers to use his.[33] Johnson nonetheless failed to engage in protected activity because he did not advise Outback of the alleged theft until after he was terminated, as Johnson's first mention to Outback of theft came on May 2, 2026, the day after he was terminated. Outback has no record of Johnson making a report earlier than that to its ER Department or otherwise reporting the theft allegations to Rockett. Johnson has no evidence to corroborate that he called Outback on April 1, 2024.[34]

In the absence of evidence that Johnson advised Outback of a violation of law prior to his termination, Johnson failed to engage in protected activity, further warranting dismissal of Johnson's LWA claim.

### D.    Johnson Cannot Establish Causation

Louisiana courts apply the *McDonnell Douglas* burden-shifting framework for retaliation claims under the LWA. *Dobyns v. Univ. of Louisiana Sys.*, 2018-0811 (La. App. 1 Cir. 4/12/19), 275 So. 3d 911, 926–27; *See also Goring v. Bd. of Sup'rs of Louisiana State Univ.*, 932 F. Supp. 2d 642, 655–56 (M.D. La. 2010) (any claims based on violation of Louisiana Revised Statute 23:967, Louisiana's anti-reprisal statute, are subject to the same analysis as retaliation claims arising under federal law.).

To establish a prima facie case of retaliation, "a plaintiff must show that: (1) he participated in an activity protected under the statute; (2) his employer took an adverse employment action

---

[33] Exhibit 1, Johnson Deposition 277:25-279:19.
[34] Exhibit 1, Johnson Deposition 216:2-22.

13

against him; and (3) a causal connection exists between the protected activity and the adverse action. If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation, which the employee accomplishes by showing that the adverse action would not have occurred "but for" the employer's retaliatory motive." *Dobyns,* 275 So. 3d at 925.

As noted in Section IV(C), Johnson failed to engage in protected activity prior to his termination, such that Johnson cannot establish a prima facie case of retaliation.

Even if Johnson could present a genuine issue of material facts regarding his engagement in protected activity, Johnson cannot satisfy his ultimate burden of proof. Outback's terminated Johnson's employment for legitimate and non-retaliatory reasons, as Barney and Silva observed and counseled Johnson on performance issues and received a report that Johnson instructed guests to leave him a positive Google review and to claim that the server sucked. Even if Johnson made complaint in April 2024, which Outback denies, the undisputed evidence establishes that Johnson never told Barney of the complaint and that Barney and Rockett were unaware of any such complaint prior to his termination.[35]

Johnson has no evidence that would demonstrate, let alone create a genuine issue of material fact, that his supposed engagement in protected activity resulted in his termination. With the causation element unsatisfied, Johnson's LWA claim must be dismissed.

---

[35] Exhibit 1, Johnson Deposition 249: 5-7; Exhibit 2, Barney Declaration; Exhibit 3, Employee Relations Case: US-2024-9909; Exhibit 4, Employee Relations Case: US-2024-9937.

**E.      The Alleged Unauthorized Theft by Employees is Not an Employment Act or Practice**

While Outback maintains that Johnson's co-workers did not steal any money from the company, and further maintains that the Court need not reach this part of the analysis, if the Court disagrees, Johnson's LWA claim should be dismissed because the acts of theft he alleges are not an employment act or practice attributable to Outback.

Louisiana law requires the plaintiff to "establish that the employer, not simply its employees, violated state law. *Gautreau v. EnLink Midstream Operating GP, LLC*, 2021-0796 (La. App. 1 Cir. 5/25/22) citing (*Dillon v. Lakeview Regional Medical Center Auxiliary, Inc*., 2011-1878 (La. App. 1 Cir. 6/13/12), 2012 WL 2154346, at *5 & n. 8 (unpublished) (observing that "it could be concluded that the employer must be the actor who violated the law, in order for there to be a cause of action under" La. R.S. 23:967, and that "there is no indication in the provisions of [La.] R.S. 23:967, in referencing an 'act or practice' of the employer, that such would encompass unauthorized acts of its employees")).

Johnson concedes that theft is not a part of a server's job duties or within the scope of any employee's job for that matter.[36] In his deposition Johnson attempted to square that admission with his claim by switching focus from the server's use of the comp card to Barney's authority to comp items off of a ticket.[37] But in doing so, Johnson entirely changes the basis of his LWA claim, as it would no longer be theft by the servers. Such change amounts to a late amendment to and expansion of Johnson's complaint, to which Outback objects.

---

[36] Exhibit 1, Johnson Deposition 280:14-21.

[37] Exhibit 1, Johnson Deposition 281:3-283:13.  Even under such theory, he cannot prevail. As previously mentioned, Johnson affirmed that it is not his belief that Barney lacked authority to comp items from a ticket.  *See* Exhibit 1, Johnson Deposition 269:16-271:2. Indeed, Barney's position as a co-owner and manager of the restaurant vests him with such authority. *See* Exhibit 1, Johnson Deposition 159:18-25; Exhibit 2, Barney Declaration.  Johnson concedes that Barney's authority to comp items results in no theft having occurred. Exhibit 1, Johnson Deposition 281:3-283:13.

15

Johnson asserts an LWA claim on the grounds that servers at the restaurant committed theft. In addition to being unable to identify any ticket, or otherwise have evidence demonstrating, that servers improperly used a comp card of Tuck Away card to steal from Outback to increase their tips, Johnson's hurdle is to show that the act of theft was an employment act or practice of Outback. Outback and Barney deny that they allow servers to improperly use comp cards and Tuck Away cards. Johnson has no evidence to the contrary. Accordingly, Johnson's claim amounts to nothing more than alleged acts of rogue employees that were not condoned by Outback. Thus, Johnson cannot demonstrate that the servers' use of Barney's comp card and Tuck Away cards is an employment act or practice covered by the LWA.

Even if Johnson could demonstrate that Outback condoned the servers' actions, which Outback denies, such brings the matter back to the discussion in Section IV(B) – i.e. there is no theft because Outback donated its property instead of taking the property of another, Outback consented to it, and there was no fraudulent conduct by the servers.

Finally, Johnson's reliance on *respondeat superior,* that he raised in response to Outback's Rule 12(c) Motion for Judgment on the Pleadings,[38] is unavailing and should be rejected.  First, the alleged crime of theft is a specific intent crime, which is incongruent with *respondeat superior* that imposes liability solely upon agency principles without consideration of the employer's intent. Along those lines, Louisiana courts require specific intent under the LWA, as an employer becomes liable only when it condones or authorizes the wrongful conduct, which happens "**when [the employer]** has notice of same and **covers up the activity or refuses to investigate it**." *Zelenak v. Beauregard Elec. Coop. Inc.*, No. 2:24-CV-01803, 2025 WL 2025177, at *3 (W.D. La. July 18, 2025) (citing *Trautenberg v. Hutson*, 2025 WL 592777, at *3 (E.D. La. Feb. 24, 2025)) (emphasis

---

[38] R. Doc. 22.

16

added). In essence, the LWA is not an imputed liability statute. Third, *respondeat superior* misses and confuses the point. An employer held liable under the doctrine of *respondeat superior* is responsible for acts committed by an employee resulting in injury to a third person. In this case, Johnson claims that Outback directly harmed him. In other words, the servers' alleged theft was not the cause of Johnson's harm. Rather, Johnson's harm resulted from his termination, which the servers did not do. Rather, Johnson contends it was Outback who retaliated against Johnson for reporting the theft. Lastly, no court has imposed liability on an employer under the LWA by way of *respondeat superior*. The only case found to address *respondeat superior* in the LWA context was the Western District of Louisiana in *Zelenak, supra*, which theory the court rejected. *Zelenak*, No. 2:24-CV-01803, at *2.

## V.       Conclusion

Johnson lacks evidence to show or that would create a genuine issue of material fact that Outback actually violated state law, that Johnson engaged in protected activity, or that Outback's reasons for termination were pretext for retaliation. For the foregoing reasons, Outback is entitled to judgment in its favor as a matter of law, and respectfully requests that this Court grant this Motion for Summary Judgment, dismissing each of Johnson's claims with prejudice.

Respectfully submitted:

/s/ *Andrew J. Halverson*

Andrew J. Halverson, La. Bar. No. 31184
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Lafayette, LA 70508
Telephone: (337) 769-6582
Facsimile: (337) 989-0441
Email: Andrew.Halverson@ogletree.com

and

Makala L. Graves, La. Bar. No. 40608

17

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
701 Poydras Street, Suite 3500
New Orleans, LA 70139
Telephone: 504-648-2612
Facsimile: 504-648-3859
Email: Makala.graves@ogletree.com

*Attorneys for Defendant OS Restaurant Services, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing document has this date been served to all known counsel of record in this proceeding by:

( )    Hand Delivery                      ( )    Prepaid U.S. Mail

( )    Facsimile                          ( )    Federal Express

( )    E-Mail                             ( X )  CM/ECF System

Lafayette, Louisiana, this 10th day of July, 2026.

    /s/ Andrew J. Halverson
    Andrew J. Halverson

18