## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

RODNEY JOHNSON,

                Plaintiff,

     vs.

OUTBACK STEAKHOUSE OF FLORIDA, LLC,

                Defendant.

Case No.: 3:25-cv-376 (BAJ) (RLB)

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

David S. Moyer, Esq.
**LAW OFFICES OF DAVID S. MOYER**
13551 River Road
Luling, LA 70070
(985) 308-1509
 (985) 308-1521
davidmoyerlaw@gmail.com

Emanuel Kataev, Esq.
*Admitted pro hac vice*
**CONSUMER ATTORNEYS PLLC**
6829 Main Street
Flushing, NY 11367-1305
(718) 412-2421 (office)
(718) 489-4155 (facsimile)
ekataev@consumerattorneys.com

*Attorneys for Plaintiff*
*Rodney Johnson*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................. 1

FACTS AND PROCEDURAL HISTORY ......................................................................... 3

STANDARD OF REVIEW ................................................................................................. 3

ARGUMENT ....................................................................................................................... 4

      A.      The LWPA ........................................................................................................ 4

      B.      Johnson Has Proven an Actual Violation of Law by Outback ......................... 5

      C.      Johnson Advised Outback of the Violation and Objected to the Violation ... 12

      D.      Johnson Was Fired Because of the Refusal ..................................................... 12

      E.      Johnson Has Established Causation ................................................................. 12

      F.      The Unauthorized Theft is an Employment Act or Practice ........................... 15

      G.      Summary Judgment May Not Be Based on Credibility Determinations ...... 16

      H.      Lack of evidence in Defendant's possession does not eliminate personal knowledge ...................................................................................................... 17

CONCLUSION ................................................................................................................. 18

## TABLE OF AUTHORITIES

**Cases**

Barousse v. Paper, Allied-Indus. Chem. & Energy Workers Int'l Union,
      No. 00-31155, 2001 U.S. App. LEXIS 31309 (5th Cir. Jul10, 2001) ............................... 3

Baumeister v. Plunkett,
      95-2270 (La. 05/21/96), 673 So. 2d 994 ............................................................ 6

Broussard v. Broussard,
      340 So. 2d 1309 (La. 1976) ............................................................................... 11

Causey v. Winn-Dixie Logistics, Inc., 2015-0813
      (La. App. 1 Cir 12/23/15), 186 So. 3d 187 ........................................................ 5

Clark Cnty. Sch. Dist. v. Breeden,
      532 U.S. 268 (2001) ........................................................................................... 13

Dobyns v. Univ. of La. Sys., 2018-0811
      (La. App. 1 Cir 04/12/19), 275 So. 3d 911 ................................................... 12-13

Goring v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.,
      932 F. Supp. 2d 642 (M.D. La. 2010) .................................................................. 13

Hughes v. Derwinski,
      967 F.2d 1168 (7th Cir. 1992) ............................................................................ 13

Ladd v. Law Enf't Dist.,
      2022-0212 (La. App. 4 Cir 10/05/22), 350 So. 3d 962 ...................................... 7, 8

Lee v. Hood Container of La., LLC,
      No. 23-219-JWD-RLB, 2023 U.S. Dist. LEXIS 199617 (M.D. La. Nov. 7, 2023) .......... 5

Lindsley v. TRT Holdings, Inc.,
      984 F.3d 460 (5th Cir. 2021) ............................................................................... 3

Musser v. Paul Quinn Coll.,
      944 F.3d 557 (5th Cir. 2019) ............................................................................... 16

Nowlin v. Resol. Tr. Corp.,
      33 F.3d 498 (5th Cir. 1994) ................................................................................. 4

O'Krepki v. O'Krepki,
      2025-00551 (La. 05/01/26), 432 So. 3d 123 ....................................................... 11

O'Neal v. Ferguson Constr. Co.,
        237 F.3d 1248 (10th Cir. 2001) ................................................................. 13

Reed v. Hawley,
        2018-0078 (La. App. 4 Cir 08/01/18), 318 So. 3d 48 ..................................... 11

Richardson v. Axion Logistics, L.L.C.,
        780 F.3d 304 (5th Cir. 2015) .................................................................... 7

Richmond v. ONEOK, Inc.,
        120 F.3d 205 (10th Cir. 1997) ............................................................ 13, 14

Sheets v. Scott & White Hosp. of Marble Falls,
        No. 25-50671, 2026 U.S. App. LEXIS 10905 (5th Cir. Apr. 16, 2026) .......................... 13

Shirley v. Chrysler First, Inc.,
        970 F.2d 39 (5th Cir. 1992) .................................................................... 14

Smith v. Xerox Corp.,
        371 Fed. Appx. 514 (5th Cir. 2010) ............................................................. 4

Sonnier v. Diversified Healthcare-Lake Charles, LLC,
        22-420 (La. App. 3 Cir 04/26/23), 364 So. 3d 1213 .................................... 5, 7, 8

State ex rel. T.H.,
        14-179 (La. App. 3 Cir 06/04/14), 140 So. 3d 911 ...................................... 6, 8

Strong v. Univ. Healthcare Sys., L.L.C.,
        482 F.3d 802 (5th Cir. 2007) .................................................................... 13

Transamerica Ins. Co. v. Avenell,
        66 F.3d 715 (5th Cir. 1995) ..................................................................... 4

Trautenberg v. Hutson,
        No. 23-6525, 2025 U.S. Dist. LEXIS 32120 (E.D. La. Feb. 24, 2025) ............................ 7

Turner v. Baylor Richardson Med. Ctr.,
        476 F.3d 337 (5th Cir. 2007) .................................................................... 4

Zelenak v. Beauregard Elec. Coop. Inc.,
        No. 2:24-CV-01803, 2025 U.S. Dist. LEXIS 137941 (W.D. La. July 18, 2025) ......... 7, 15

iv

**Statutes**

6 Del. C. § 18-701 ................................................................................................... 9

Louisiana Civil Code Article 1468 ........................................................................ 11

Louisiana Civil Code Article 1526 .................................................................. 11, 12

Louisiana Civil Code Article 1527 .................................................................. 11, 12

Louisiana Civil Code Article 2320 .......................................................................... 6

Louisiana Whistleblower Protection Act, La. R.S. § 23:967 ............................ 2, 5, 7

**Rules**

Fed. R. Civ. P. 56 ............................................................................................ 1, 3, 18

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

RODNEY JOHNSON,

Plaintiff,

vs.

OUTBACK STEAKHOUSE OF FLORIDA,
LLC,

Defendant.

Case No.: 3:25-cv-376 (BAJ) (RLB)

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## PRELIMINARY STATEMENT

Plaintiff Rodney Johnson ("Johnson" or "Plaintiff"), by and through his attorneys, Sage Legal LLC, respectfully submits the instant memorandum of law in opposition to Defendant Outback Steakhouse of Florida, LLC's ("Outback" or "Defendant") motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure (hereinafter the "Rules" or "Rule").

Defendant's motion rests on a false dichotomy. Defendant argues that, if Managing Partner Brent Barney authorized servers to use his manager card to issue purported "comps" after customers had already paid their checks, the diversion was consensual and therefore could not constitute theft. Defendant then argues that, if Barney did not authorize the conduct, it was merely the unauthorized act of rogue employees and therefore cannot be attributed to Defendant.

The record permits a third and materially different conclusion: local management knowingly permitted employees to enter false or pretextual comps, conceal revenue that customers had already paid, and retain the resulting cash as additional compensation, even though management lacked authority to use Defendant's property or accounting system for that purpose.

Defendant cannot simultaneously rely on Barney's status and authority to establish Defendant's supposed "consent," while treating the same managerial participation as irrelevant when determining whether the practice is attributable to Defendant under the Louisiana Whistleblower Protection Act ("LWPA"). Whether Barney had authority to grant legitimate customer-service comps is not the dispositive question.[1] The material questions are whether he authorized false comps after customers had paid in full, whether the resulting cash belonged to Defendant or the customers rather than the servers, whether those transactions were concealed through false entries in Defendant's point-of-sale system, and whether such conduct fell within the lawful scope of Barney's authority. Johnson's testimony and Defendant's own Employee Relations records create genuine disputes as to each of those issues. At a minimum, the record contains gaps which only the Defendant can fill such that Plaintiff, as non-movant, is entitled to evidence in the exclusive possession, custody, and control of Defendant in order to properly oppose the instant motion such that it should be denied under Rule 56(d).

Defendant also myopically misses the elephant in the room standing in the way of its motion for summary judgment: Plaintiff has provided sworn testimony that he made a complaint on April 1, 2024, prior to his termination, while Defendant asserts that he did not make a complaint until after he was terminated in May 2024; this dispute alone warrants denial of Defendant's motion, as a jury is entitled to make that credibility determination over a materially disputed fact.

---

[1] And there exists an issue of fact as to that, as the Defendant quizzically failed to provide any evidence that other co-owner(s) of the Defendant permitted Barney *carte blanche* to waste corporate assets in the manner asserted herein. There is no declaration from any co-owner authorizing Barney to act in this manner, nor was any operating agreement or standard operating procedures produced to indicate that this conduct was permitted. Defendant does not even bother to identify whether Barney is a majority or minority member of the Defendant. Its self-serving assertion that Barney is permitted to steal from the company at his whim should be rejected under the sham affidavit doctrine.

The record also presents direct disputes concerning protected activity and causation. Johnson testified that he repeatedly complained to Barney and Joceline Salva ("Salva") *before* his termination, called Defendant's corporate reporting line on April 1, 2024, refused a request to surrender his manager credentials for another purported comp, attempted to elevate his complaints to Dale Rockett ("Rockett"), and expressly told Barney during the May 1, 2024 termination encounter that he had reported the misconduct. The next day, Johnson gave Defendant a materially consistent account: that he had made an April 1, 2024 complaint concerning theft and harassment and had been fired after refusing to provide a server his card to comp food. Defendant's own case notes further state that, as Johnson left, he said that he intended to report harassment. A jury, not this Court on summary judgment, must decide whether to credit Johnson or Barney.

## FACTS AND PROCEDURAL HISTORY

Plaintiff respectfully refers the Court to his opposing statement of material facts and accompanying declaration with exhibit for a recitation of the material facts in dispute.

## STANDARD OF REVIEW

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). "If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial." See Barousse v. Paper, Allied-Indus. Chem. & Energy Workers Int'l Union, No. 00-31155, 2001 U.S. App. LEXIS 31309, at *7-8 (5th Cir. July 10, 2001). A fact is material if it might affect the outcome of the suit, and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for [the non-moving party]. See Lindsley v. TRT Holdings, Inc., 984 F.3d 460, 466 (5th Cir. 2021).

3

"When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. For any matter on which the non-movant would bear the burden of proof at trial, however, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Only when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party' is a full trial on the merits warranted." See Transamerica Ins. Co. v. Avenell, 66 F.3d 715, 718-19 (5th Cir. 1995).

"When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence. […]. Instead, we 'draw all reasonable inferences in favor of the nonmoving party.'" See Turner, 476 F.3d at 343 (internal citations omitted). It is important to bear in mind that retaliation claims are often based on circumstantial evidence, which frequently requires a determination by a jury. See Smith v. Xerox Corp., 371 Fed. Appx. 514, 520 (5th Cir. 2010) ("[T]he existence of a causal link between protected activity and an adverse employment action is a 'highly fact specific' and difficult question") (citing Nowlin v. Resol. Tr. Corp., 33 F.3d 498, 508 (5th Cir. 1994)).

## ARGUMENT

**A.    The LWPA**

The LWPA provides, in pertinent part, that "[a]n employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:

> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law. […] [or] (3) Objects to or refuses to participate in an employment act or practice that is in violation of law."

See La. Rev. Stat. Ann. § 23:967.

4

In other words, "[t]he Whistleblower Statute protects employees against reprisal from employers for reporting or refusing to participate in illegal work practices." See Causey v. Winn-Dixie Logistics, Inc., 2015-0813 (La. App. 1 Cir 12/23/15), 186 So. 3d 185, 187.

"'Reprisal' includes firing, layoff, loss of benefits, or any discriminatory action the court finds was taken as a result of an action by the employee that is protected under Subsection A of this Section[…]." See La. Rev. Stat. Ann. § 23:967(C)(1).

"The statute targets serious employer conduct that violates the law. […]. To prevail under the statute, the plaintiff must establish an actual violation of state law; a good faith belief that a violation occurred is insufficient." Id. (internal citations omitted).

"A whistleblower must show he (1) realized his employer violated a Louisiana law; (2) advised the employer of the violation; (3) refused to participate in it; and (4) was fired because of the refusal." See Lee v. Hood Container of La., LLC, No. 23-219-JWD-RLB, 2023 U.S. Dist. LEXIS 199617, at *4 (M.D. La. Nov. 7, 2023).

"The act or practice must be condoned by the employer, such that it can be attributed to the employer." See Sonnier v. Diversified Healthcare-Lake Charles, LLC, 22-420 (La. App. 3 Cir 04/26/23), 364 So. 3d 1213, 1233.

## B.    Johnson Has Proven an Actual Violation of Law by Outback

The Louisiana law at issue here is theft, La. R.S. 14:67:

> Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.

See La. Rev. Stat. Ann. § 14:67(A).

5

"[T]here are three essential elements of the crime of theft which must be proved by the prosecution *beyond a reasonable doubt*: 1. The 'misappropriation or taking of anything of value which *belongs to another*,' 2. Either 'without the consent of the other . . . or by means of fraudulent conduct,' 3. With 'intent to deprive the other permanently' of the object of the taking or misappropriation." See State ex rel. T.H., 14-179 (La. App. 3 Cir 06/04/14), 140 So. 3d 911, 926 (emphasis in original) (internal citation omitted).

Here, Johnson can prove all three (3) of these elements.

As to the first element, there is no question that there has been a misappropriation of a thing of value which belongs to another. The thing of value is the monies available on the Tuck Away cards which belongs to Defendant, which was misappropriated by management to give to employees. Defendant's insistence that "Outback cannot steal its own property" ignores Louisiana state law principles of *respondeat superior*, under which "'masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.'" See ECF Docket Entry 25-1 at 10; see also Baumeister v. Plunkett, 95-2270 (La. 05/21/96), 673 So. 2d 994, 996 (citing Louisiana Civil Code article 2320). Accordingly, Defendant's knowingly adopting and condoning its employees' unlawful misappropriation and concealment as an ongoing workplace practice is attributable to Defendant.

Defendant's contention also obscures the transaction. Johnson's testimony permits a finding that, once a customer paid the original check, the corresponding cash belonged to Defendant. If a purported comp retroactively reduced the amount legitimately owed by the customer, the difference instead should have been returned or credited to the customer. Under either characterization, the difference did not belong to the server who retained it.

6

The alleged property was therefore money belonging to Defendant, the customer, or both—not money the servers were otherwise entitled to take. Whether the money had legally become Defendant's property or remained an overpayment belonging to the customer is a factual and legal characterization that cannot be resolved through Barney's conclusory denial.

Defendant is correct only in the abstract that La. R.S. § 23:967 requires an actual violation attributable to the employer, rather than merely an isolated violation committed by a rogue employee. See Ladd v. Law Enf't Dist., 2022-0212, 350 So. 3d 962, 967 (La. App. 4 Cir 10/05/22). That rule does not mean, however, that unlawful conduct initially carried out by a manager or employee can never constitute an employer violation.

An employee's unlawful workplace conduct may be attributed to the employer when the employer authorizes, condones, institutionalizes, or knowingly conceals it, such that it becomes a workplace act attributable to the Company. See Sonnier v. Diversified Healthcare-Lake Charles, LLC, 22-420, 364 So. 3d 1213, 1233 (La. App. 3 Cir 04/26/23) (fraudulent conduct attributable to employer where there existed a pattern of employees being asked to alter records); see also Zelenak v. Beauregard Elec. Coop. Inc., No. 2:24-CV-01803, 2025 U.S. Dist. LEXIS 137941, at *4 (W.D. La. July 18, 2025) ("The bad acts of a co-employee may be attributed to the employer under the LWS if the employer condones or authorizes them"); Trautenberg v. Hutson, No. 23-6525, 2025 U.S. Dist. LEXIS 32120, at *5 (E.D. La. Feb. 24, 2025) (citing Richardson v. Axion Logistics, L.L.C., 780 F.3d 304, 306-07 (5th Cir. 2015) ("reversing Rule 12(b)(6) dismissal of Section 23:967 claim because the plaintiff plausibly alleged that the employer 'authorized' violations of Louisiana law committed by the plaintiff's co-employees")).

Here, this case is more analogous to Sonnier than to Ladd.

7

Sonnier likewise involved a Defendant employer committing theft through multiple employees encouraging other employees to fraudulently alter records (thereby promoting an illegal scheme, enacted by a collective of employees; thus attributable to the employer). In contrast, Ladd involved a rogue act by a single low-level officer, "who acted by […] his own volition." Ladd v. Law Enf't Dist., 2022-0212, 350 So. 3d 962, 967 (La. App. 4 Cir 10/05/22). In this case, Defendant exhibited a pattern of acquiescing to theft by its employees. This consisted not only of blind eye turning after the fact, but also of ignoring Plaintiff's reports of theft. It is irrelevant that servers acted with Barney's consent, and that Barney had some degree of decision-making authority at Outback; the director in Sonnier likewise, presumably, had similar decision-making authority, and enabled illegality attributable to the employer nonetheless.

Moreover, had the Defendant and its employees been doing nothing wrong, Plaintiff conceivably would have been notified of this.  But there is no evidence in the record to suggest, let alone prove, that Plaintiff's concerns were addressed by management in notifying him that there were no improprieties with the Tuck Away scheme.

Indeed, this case is materially different from Ladd. There, the alleged illegal conduct was committed by a single low-level officer acting on his own volition, with no evidence that the employer condoned the conduct. Here, Johnson's testimony, if credited, describes repeated use of the comp practice by multiple employees with the participation or permission of restaurant management. That evidence is closer to Sonnier, where repeated falsification of records at the direction of management constituted an employer-attributable workplace practice, and Richardson, where management knowledge and authorization permitted the co-employees' fraudulent conduct to be attributed to the employer. Thus, the record presents a factual issue as to authorization or condonation rather than mere vicarious liability for a rogue employee's act.

Accordingly, theft by its employees embodies a pattern attributable to Outback; and thus, Johnson has established the first element of theft. See State ex rel. T.H., 14-179 (La. App. 3 Cir 06/04/14), 140 So. 3d 911, 926 (emphasis in original) (internal citation omitted).

It is worthy to note that Defendant's argument also overlooks the independent fraudulent-conduct prong of Louisiana's theft statute. Johnson's testimony permits a finding that servers used manager credentials to record purported comps *after* customers had already paid their checks, thereby creating false point-of-sale entries and retaining money attributable to those reductions. Whether Barney possessed authority to issue legitimate guest-service comps does not resolve whether he possessed authority to facilitate fictitious or pretextual post-payment comps for the purpose of increasing employee compensation. Nor does it resolve the separate LWPA question whether the challenged practice was authorized or condoned by Outback management rather than committed by an isolated rogue employee.

The second element ("'without the consent of the other . . . or by means of fraudulent conduct'") is plainly demonstrated by the characteristics of the scheme, which involved stealing money from the cash register by improperly using manager cards to issue comps of certain dollar amounts, despite customers having paid in full and receiving no such comp. Id.; Johnson Dep. 272:9-21; 193:19-194:5; 194:13-14; 261:9-22; 281:3-11.

Defendant focuses almost exclusively on "consent" while disregarding the statutory alternative of fraudulent conduct. The alleged practice involved representing in Defendant's records that a customer had received a legitimate comp when, according to Johnson, the customer had already paid the full charge and received no corresponding reduction. Johnson Dep. 35:2-13; 272:9-21; 193:19-194:5; 194:13-14; 261:9-22; 281:3-11; 261:23-262:2; 269:25-270:3; 270:5-11.

A jury could reasonably regard a knowingly false point-of-sale entry, used to conceal the removal of the resulting cash, as fraudulent conduct or a fraudulent practice within § 14:67.

Management's alleged permission to use the credentials does not necessarily eliminate the fraud. As an initial matter, Defendant has not proven that the all the owners approved of this practice.  Second, the authority to issue legitimate guest-service comps does not establish authority to create fictitious or pretextual comps after payment for the purpose of transferring restaurant revenue to employees.  It is telling that Defendant submitted no comp policy, point-of-sale policy, manager-card policy, operating agreement, delegation of authority, or other evidence establishing that Barney possessed authority to make that particular disposition of company funds, nor is there any declaration from Defendant's co-owner(s) concerning whether they were aware Barney engaged in such conduct.

Defendant's own dearth of evidence on this point justifies denial of summary judgment. The Defendant named in this action is alleged to be a Delaware limited liability company. A member of a Delaware LLC has no ownership interest in specific company property. See 6 Del. C. § 18-701. Thus, even assuming Barney held some ownership or profit-sharing interest, Defendant has not established that he personally owned the cash, manager-card system, or restaurant revenue and could dispose of those assets as his own.  Nor does a general management title conclusively establish unlimited authority. The scope of a manager's authority depends on the governing entity documents and actual delegation. Defendant offered neither. At minimum, there is a genuine dispute over whether authority to issue *bona fide* customer comps included authority to record paid checks as comps and allow servers to retain the difference.

Indeed, Defendant's theory is internally inconsistent.

10

If Barney's conduct was sufficiently authorized to constitute Defendant's "consent," then his participation was also sufficiently managerial to permit attribution to Defendant. If his conduct was outside his authority, that supports Johnson's contention that the removal of company funds was unauthorized. Defendant cannot obtain judgment as a matter of law by selecting whichever side of that contradiction defeats the element under discussion.

The third element ("With 'intent to deprive the other permanently' of the object of the taking or misappropriation.") is demonstrated by the circumstances surrounding the misappropriation, including the personal appropriation of Company property, the absence of any plan to return it to the cash registers, and the concealment of the taking by employees and Barney or other managers alike. Johnson Dep. 272:9-21; 193:19-194:5; 194:13-14; 261:9-22; 281:3-11; 272:22-273:8 (Johnson knew that such comping was not for legitimate reason because he had heard Danielle and Renee say that, at a table that only tipped them ten dollars ($10.00), "they had to comp Twenty Dollars ($20.00) worth of food just to […] make a good tip off that table").

Similarly, Johnson was aware that Outback did not approve of comp taking due to a meeting Barney had given explaining that corporate had emailed complaining that comps are high; and due to a meeting which included warnings from corporate to not overuse comp cards and Tuck Away cards. Johnson Dep. 274:2-23; 283:19-284:14.  These facts permit a reasonable inference that the property was taken for permanent personal use rather than temporarily possessed or mistakenly retained.  It is proof positive Defendant Outback was deprived of its property.

Defendant improperly labels its behavior as a permissible donation, pursuant to Civil Code Articles 1468, 1526, and 1527, rather than as theft; a distracting argument which they do not bother to properly argue, and which they gloss over too quickly. Outback's behavior does not meet the requirements of a donation under any of the applicable statutes.

11

"A donation *inter vivos* is a contract by which a person, called the donor, gratuitously divests himself, at present and irrevocably, of the thing given in favor of another, called the donee, who accepts it." See La. Civ. Code Ann. § art.1468.

"'The donee has the burden of proving the donation, and this proof must be strong and convincing. In order for a donation to be valid, there must be a divestment, accompanied by donative intent.'" See O'Krepki v. O'Krepki, 2025-00551 (La. 05/01/26), 432 So. 3d 123, 130 (internal citation omitted); see also Broussard v. Broussard, 340 So. 2d 1309, 1312-1313 (La. 1976). "The rules peculiar to donations *inter vivos* do not apply to a donation that is burdened with an obligation imposed on the donee that results in a material advantage to the donor, unless at the time of the donation the cost of performing the obligation is less than two-thirds of the value of the thing donated." See La. Civ. Code Ann. § art.1526. Similarly, "[t]he rules peculiar to donations inter vivos do not apply to a donation that is made to recompense for services rendered that are susceptible of being measured in money unless at the time of the donation the value of the services is less than two-thirds of the value of the thing donated." La. Civ. Code Ann. § art.1527. "[D]onative intent is an issue of fact. […]. The burden of proving a donation is on the donee, and the proof must be strong and convincing." See Reed v. Hawley, 2018-0078 (La. App. 4 Cir 08/01/18), 318 So. 3d 48, 50 (internal citation omitted).

No summary-judgment evidence establishes that Defendant itself intended to donate restaurant revenue to Danielle, Renee, or any other server. Barney does not attest that Defendant adopted a program under which paid customer checks were retroactively reduced and the difference donated to servers. He denies that the conduct occurred. See ECF Docket Entry 25-3. Defendant cannot convert a disputed and allegedly concealed transaction into a lawful corporate donation merely by self-serving characterization.

12

Articles 1526 and 1527 likewise do not prove a donation. They address onerous or remunerative donations and the applicability of donation formalities; they do not establish that Defendant authorized this alleged compensation arrangement or that Barney possessed power to make it. Whether the transactions were legitimate compensation, unauthorized diversions, or fictitious accounting entries is a quintessential fact question.

**C.      Johnson Advised Outback of the Violation and Objected to the Violation**

Plaintiff first reported theft in the workplace to Barney beginning in or about November or December 2023. <u>Johnson Dep. 294:12-17.</u>    Johnson's complaints did not begin after his termination as asserted by the Defendant.  This creates the quintessential genuine dispute over material facts that requires a determination by a jury.

Johnson testified that he had raised the comp-card conduct with Barney *before* April 2024. The record then establishes a more specific pre-termination sequence.

On or about March 28 or March 29, 2024, Johnson texted Barney requesting Outback's corporate telephone number because he intended to report the problems he had observed. On April 1, Johnson contacted Outback's Human Resources Department, obtained the number for Outback's corporate complaint line, and made a twenty-to-thirty-minute report.

Johnson specifically reported that restaurant managers were permitting employees to use manager comp cards to remove food and other items from customer checks and pocket the resulting money. Outback's representative told Johnson that the matter would be investigated and that someone would contact him afterward, but Johnson received no substantive follow-up before his termination.

**D.    Johnson Was Fired Because of the Refusal**

Plaintiff was then terminated by Defendant on or about May 1, 2024, only one (1) month after his direct complaint of illegal activity in the workplace to Defendant's corporate office. Johnson Dep. 177:18; 179:11-14; 216:4-9; 223:20-224:18; 224:19-226:7; 226:13-19.

**E.    Johnson Has Established Causation**

Plaintiff agrees that Louisiana courts apply the McDonnell Douglas burden-shifting framework for retaliation claims under the LWPA, but maintains that Plaintiff was fired due to his objection to Outback's violation of the law. See Dobyns v. Univ. of La. Sys., 2018-0811 (La. App. 1 Cir 04/12/19), 275 So. 3d 911, 926-27; Goring v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll., 932 F. Supp. 2d 642, 654-56 (M.D. La. 2010).

"To establish a *prima facie* case of retaliation […], a plaintiff must show that: (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action. If the employee establishes a *prima facie* case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation, which the employee accomplishes by showing that the adverse action would not have occurred 'but for' the employer's retaliatory motive." See Dobyns v. Univ. of La. Sys., 2018-0811 (La. App. 1 Cir 04/12/19), 275 So. 3d 911, 925.

"'Temporal proximity can be an indicator or a proxy for this form of causation, but it is not required or dispositive if there is other evidence of knowledge.' […]. A subjective belief of retaliation, 'without more,' is insufficient to survive summary judgment. […] If a plaintiff brings forth 'mere temporal proximity between an employer's knowledge of protected activity and

14

an adverse employment action as sufficient evidence of causality,' then 'the temporal proximity must be 'very close.'" See Sheets v. Scott & White Hosp. of Marble Falls, No. 25-50671, 2026 U.S. App. LEXIS 10905, at *7, n. 11 (5th Cir. Apr. 16, 2026) (internal citations omitted) (citing Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001); O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001); Strong v. Univ. Healthcare Sys., L.L.C., 482 F.3d 802, 807-09 (5th Cir. 2007); Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997); Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7th Cir. 1992)).

"Consideration of such dates is part of our analysis, but not in itself conclusive of our determinations of retaliation." See Shirley v. Chrysler First, Inc., 970 F.2d 39, 44 (5th Cir. 1992) (holding retaliation after fourteen months, in light of other circumstances including no prior disciplinary history over nine years and harassment about complaint prior to termination). "A plaintiff can demonstrate pretext by showing 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's . . . reasons for its action,' which 'a reasonable factfinder could rationally find . . . unworthy of credence.'" See Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997) (internal citation omitted).

Here, Johnson objected to Outback's theft, which is protected activity under the LWPA, and was fired only one (1) month after he made a complaint in April 2024. Johnson Dep. 177:18; 179:11-14; 216:4-9; 223:20-224:18; 224:19-226:7; 226:13-19. Moreover, Defendant's stated reason – that there was an unavailability of hours to keep him employed, and that Johnson had a history of performance issues including a negative report – is all pretext for retaliation, as Outback is historically busy (particularly at this location) and hence tends to be short-staffed. Johnson Dep. 250:2-4; 153:1-154:4; 155:11-157:8; 135:20-136:19; 169:3-8; 210:23-211:10; 211:11-16; 211:17-24; 239:22-240:17; see also ECF Docket Entry 25-1 at 14.

15

For example, despite corporate saying they would reach back out to Johnson via his phone or email, Johnson has not ever heard back from them; he did not ever receive an email in connection with his complaint to corporate, nor did he receive a confirmation email that he made a complaint. Johnson Dep. 226:23-227:16; 228:1-12. Rockett remained unaware because Johnson was unable to contact him. Johnson Dep. 164:22-165:13; 187:1-10; 204:4-11; 205:10-22; 204:12-205:3.

Barney's knowledge is supported by direct testimony, not merely an inference from temporal proximity. Johnson states that during the May 1, 2024 termination encounter, he told Barney that he wanted to speak with Regional Manager Rockett and that he had already contacted Outback's corporate reporting line and reported what had been occurring at the restaurant. Johnson states that, shortly thereafter, Barney told him that Outback had to "make cuts" and terminated his employment. Thus, even assuming Rockett had no personal knowledge of Johnson's April 1 complaint before the termination, the record permits a finding that the manager who actually terminated Johnson knew of Johnson's protected activity before taking the adverse action.

That evidence is reinforced by Johnson's testimony that he received no performance-related discipline or warning between his April 1 corporate complaint and his May 1 termination and by Defendant's present reliance on alleged performance deficiencies which were not raised when Defendant terminated Plaintiff.  See Musser v. Paul Quinn Coll., 944 F.3d 557, 564 (5th Cir. 2019) (It is true that '[a]n employer's inconsistent explanations for an employment decision' may give rise to an inference of pretext in some cases").

Indeed, further evidence of causation is found not only by temporal proximity, but by Plaintiff's having no prior disciplinary history at Outback prior to his complaint. Johnson Dep. 33:1-7; 250:20-251:5; 124:25-125:22; 298:3-7.

16

Accordingly, the only one (1) month temporal proximity, combined with Plaintiff's lack of prior disciplinary history and Defendant's demonstrated hostility toward Plaintiff following his complaint, point toward causation supporting retaliation under the LWPA, such that Defendant's motion for summary judgment must be denied.

**F.     The Unauthorized Theft is an Employment Act or Practice**

Defendant properly cites authority for the proposition that "[a]n employer condones or authorizes an employee's illegal activity when it has notice of same and _covers up the activity or refuses to investigate it._" See Zelenak v. Beauregard Elec. Coop. Inc., No. 2:24-CV-01803, 2025 U.S. Dist. LEXIS 137941, at \*7 (W.D. La. July 18, 2025), and adds emphasis, yet ignores that Outback did indeed cover up the activity and refused to investigate it. Johnson Dep. 165:16-166:23; 247:25-248:16; 273:8-21; 295:16-17; 191:11-25; 226:13-19; 226:23-227:16; 228:1-12.

Defendant's description of Zelenak – as rejecting _respondeat superior_ in the LWPA context – is inaccurate. In Zelenak, _respondeat superior_ was applicable, where "the actions reported[…] were so open and notorious that all board members must have been aware of them." Zelenak, 2025 U.S. Dist. LEXIS 137941, at \*7-8 ("The court stresses, however, that plaintiff can only succeed by showing actual or constructive knowledge on the part of all board members, and an ensuing failure to investigate, as to specific illegal actions of BECi employees").

Defendant needlessly repeats its arguments regarding employer liability. Johnson's mentioning of both employees' use of comp cards and Barney's authority in instructing employees regarding same does not change the basis of Johnson's LWPA claim. Just like in Zelenak, employees' use of comp cards was open and notorious to all higher-level managers. Johnson Dep. 272:9-21; 193:19-194:5; 194:13-14; 261:9-22; 281:3-11; 261:23-262:2 (Brent would allow Danielle and Renee to use his comp card); 262:3-10 (Barney and Joslyn would give servers other

17

than Renee and Danielle the comp card as well, but mostly gave them Tuck Away cards); 269:25-270:3 ("[…] Brent gave them the comp card so they can leave with good tips at the end of the day"); 270:5-11 (Brent and Joslyn would do the same thing for other servers, just not to the same degree or amount); 33:8-24; 39:1-40:20; 42:16-44:23 ("[…] '[…] we do that for everybody. We make sure everybody eat. You know, if they get a bad table and nobody done tip, we go in there, and we comp something off and […] we give it to them […] in tips. You know what I'm saying, we knock something off and then, you know, give […] a little something'; "Brent and Joslyn both said that they do. They said they make sure everybody eats because they know it's hard for servers to make money. [...] that's how they stated it, they make sure everybody eats, like make sure everybody makes some money on their shifts"); 193:9-18; 273:22-274:1.

As part of its efforts to deny Plaintiff's application of *respondeat superior*, Defendant inaccurately asserts that the harm in question (caused by Defendant) is Johnson's termination. However, the principles of *respondeat superior* apply not to the LWPA claim, but to the underlying state law claim (theft) therein. Accordingly, the servers' theft was the cause of the harm to Outback, *and* is attributable to Outback, since managers like Barney both encouraged the activity and refused to investigate it.

### G. Summary Judgment May Not Be Based on Credibility Determinations

Summary judgment is warranted only when no reasonable jury could return a verdict for the nonmovant. In deciding the motion, the Court must view the evidence and draw reasonable inferences in Johnson's favor and may not weigh testimony or decide which witness is more credible. Defendant repeatedly characterizes Johnson's testimony as "self-serving," "uncorroborated," or lacking documentary support. Those labels do not remove his testimony from the summary-judgment record.

18

The Fifth Circuit distinguishes between conclusory assertions and particularized testimony based on personal observation. Detailed testimony describing specific events, participants, methods, statements, and dates is competent evidence even when given by an interested witness.

Johnson did not merely offer a generalized belief that "theft occurred." He described the alleged transaction: a customer paid the full check; a server subsequently used a manager card to record a comp; the transaction was reduced in Defendant's system; and the server retained cash attributable to the false reduction. Johnson Dep. 35:2–13, 38:4–25. He identified Danielle and Renee as servers who possessed or used Barney's card, described the use of "Tuck Away" cards as substitutes for tips, identified Barney and Salva as managers who approved or tolerated the practice, and described management's explanation that it wanted to "make sure everybody eats." Id. 39:1–40:20, 42:16–46:6, 53:4–17. He also described the particular April 1, 2024 incident in which he refused to provide his card and the adverse events that followed. Id. 46:7–47:20.  Barney denies those events. See ECF Docket Entry 25-3. These are issues of fact for a jury to decide.

**H.  Lack of evidence in Defendant's possession does not eliminate personal knowledge**

Johnson's inability to identify a surviving point-of-sale ticket affects the weight of his testimony, not its competence. Plaintiff testified about conduct he personally observed, identified participants, explained the transaction mechanics, described contemporaneous conversations, and testified that recordings and screenshots once existed.

The jury may consider the absence of transaction-level documentation and the loss of recordings when assessing credibility. It does not permit the Court to disregard otherwise specific personal-observation testimony, which is evidence.

If anything, the fact that Johnson has no possession, custody, or control of such documents, which are exclusively within Defendant's control, requires denial of Defendant's motion under the

19

Rules.  See Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order").

Indeed, the absence of objective transaction records is not solely attributable to Johnson. Defendant controls the point-of-sale system, comp logs, manager-card audit trails, employee schedules, and internal policies. Yet Defendant submitted none of those materials with its motion. Defendant's own Rule 26 disclosures identified Johnson's personnel file, schedules, performance reviews and write-ups, EthicsPoint materials, and investigation documents as potentially supporting its defenses, but the motion does not submit any such documents.

Defendant's motion should thus be denied on the grounds they claim it should be granted: Defendant's failure to submit the evidence in its possession, custody, and control concerning the use of comp cards, gift cards, and/or Tuck Away cards.

20

## **CONCLUSION**

For all the foregoing reasons, Defendant's motion for summary judgment should be denied.

Dated:  Jamaica, New York
      August 7, 2026                                    Respectfully submitted,

                                            David S. Moyer, Esq.
**LAW OFFICES OF DAVID S. MOYER**
13551 River Road
Luling, LA 70070
(985) 308-1509
(985) 308-1521
davidmoyerlaw@gmail.com

*/s/ Emanuel Kataev, Esq.*
Emanuel Kataev, Esq.
*Admitted pro hac vice*
**SAGE LEGAL LLC**
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Attorneys for Plaintiff*
*Rodney Johnson*

21