**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **RODNEY JOHNSON** | * | **DOCKET NUMBER: 3:25-cv-376** |
| | * | |
| | * | **JUDGE BRIAN A. JACKSON** |
| **VERSUS** | * | |
| | * | **MAGISTRATE JUDGE** |
| **OUTBACK STEAKHOUSE OF** | * | **RICHARD L. BOURGEOIS** |
| **FLORIDA, LLC** | * | |

******************************************************************************

**REPLY IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

OS Restaurant Services, LLC (wrongly identified as Outback Steakhouse of Florida, LLC) (hereinafter "Outback") submits this reply in support of its Motion for Summary Judgment. The motion should be granted, and Johnson's claims dismissed, because: (i) Johnson cannot establish that Outback engaged in theft; (ii) Johnson has not presented evidence demonstrating he engaged in protected activity, including an absence of evidence that he alerted Outback that the company's actions constituted theft; and (iii) Johnson failed to present evidence that Outback's legitimate, non-retaliatory reason for terminating Johnson was pretextual.

## I. Johnson Cannot Establish the Elements of Theft

For this motion, the elements of theft at issue concern: (1) whether Outback took the property belonging to another; (2) whether Johnson has demonstrated Outback had the specific intent to steal such property; and (3) whether the servers at the restaurant engaged in fraudulent conduct, practices, or representations. Johnson's failure as to any one of those elements requires dismissal of his LWA claim.

### A. Outback Did Not Take Property Belonging to Another

Louisiana law defines the term "another" for purposes of the crime of theft as: "any **other** person or legal entity." *La. R.S. 14:2* (emphasis added)*; State v. Peterson,* 232 La. 931, 938, 95 So. 2d 608, 611 (1957) (overruled for other reasons). Johnson clearly identifies whose property he

believes was taken, *i.e.* "The thing of value is the monies available on the Tuck Away cards **which belongs to Defendant,** which was misappropriated by management to give to employees."[1] Johnson's opposition does not deny the fundamental logic that Outback cannot steal its own money. On those grounds alone, because it cannot be shown that Outback took the property of another, there could be no theft, and hence, Johnson cannot demonstrate an actual violation of state law.

To distract from the logical result of his admission, Johnson claims the servers stole money and that Outback is responsible for the servers' alleged conduct via respondeat superior and/or because the scheme was an employment act or practice. Outback discuses respondeat and employment act or practice below, which has no bearing on the element concerning property of another. Johnson essentially argues that the servers' alleged theft becomes theft by Outback. Johnson's argument of indirect culpability is no more possible than direct culpability, as the fundamental and fatal flaw to Johnson's claim is that the money at issue from the alleged Tuck Away scheme undisputedly would belong to Outback.

In need of a third-party victim to survive summary judgment, Johnson posits – though he does not actually assert – that Johnson's testimony permits a finding that money allegedly stolen through use of the comp and Tuck Away cards belonged to the customer and should have been returned to the customer. Outback disagrees with Johnson's contention, and his error lies in a lack of understanding of Louisiana law as to when ownership of property transfers. Article 2439 of the Louisiana Civil Code provides that ownership transfers upon agreement of thing and price. In the restaurant context, a customer purchases food and services offered by the restaurant, the price for which is reflected by the bill. Accordingly, when a customer pays their bill, the restaurant becomes owner of the funds received for providing food and services. Johnson does not contend and presents

---

[1] R. Doc. 30, p. 6.

no evidence that any customer was overcharged. Rather, Johnson describes the Tuck Away scheme as occurring after the customer paid and the food/service transaction was complete. Thus, any money from deductions described by Johnson's Tuck Away scheme would not have belonged to the customer.

Without showing that Outback took property belonging to another person, Johnson fails to demonstrate theft, thereby requiring dismissal of his LWA claim.

### B. Specific Intent Cannot Be Transferred Via Respondeat Superior, and Respondeat Superior Does Not Apply to Theft by Employees

Johnson's opposition contains no legal analysis and offers nothing from the Louisiana Civil Code, revised statutes, or interpretive jurisprudence concerning whether respondeat superior applies to this case. Johnson merely assumes it does, and he is wrong.

A few obstacles prevent respondeat superior from applying to this case. The first is what Outback discusses in the previous section, which is that respondeat superior would result in the alleged offender and victim becoming merged into the same person, which is not possible.

Another obstacle is that respondeat superior would result in the servers' alleged intent to steal being imputed to Outback. Louisiana law does not permit the transfer of specific intent from one person to another. As mentioned in Outback's principal brief, theft is a specific intent crime. *State v. Millennium Health Care Servs.*, 2019-1143 (La. App. 1 Cir. 6/22/21), 328 So. 3d 1168, 1176. Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. *La. R.S. 14:10(1); State v. Brown*, 41,386 (La. App. 2 Cir. 9/20/06), 940 So. 2d 100, 102. "**The mental state of one defendant may not be imputed to another defendant.**" *State v. Cedrington*, 98-253 (La. App. 5 Cir. 12/16/98), 725 So. 2d 565, 575 ("To support a conviction as a principal to specific intent second degree murder, the state must show that the defendant had the specific intent to kill

or inflict great bodily harm.). From the foregoing, because Johnson alleges Outback committed theft, whatever intent the servers allegedly may have to steal Outback's money is irrelevant and does not extend to Outback. Johnson must submit evidence that would demonstrate Outback independently had specific intent to steal its own money. Johnson presents no such evidence and has failed his evidentiary burden in responding to this motion.

Finally, respondeat superior requires Johnson to show the servers' alleged theft was within the course and scope of their employment. "An employer is not vicariously liable for the intentional acts committed by its employee unless such employee is acting within the ambit of his assigned duties and **also in furtherance of his employer's objectives.**" *Barto v. Franchise Enters., Inc.*, 588 So. 2d 1353, 1356 (La. Ct. App. 1991) (emphasis added). Employee theft is generally considered to lie outside of the course and scope of employment. *Id.* (citing *Bessie v. K-Mart Apparel Fashions Corp.*, 472 So. 2d 251 (La. App. 1 Cir. 1985). In *Bessie v. K-Mart,* a K-Mart employee participated in a scheme with her co-workers to steal goods from K-Mart. 472 So. 2d 253-54 (La. App. 1 Cir. 1985). When the scheme was uncovered, a fellow K-Mart employee detained the plaintiff, who was later arrested. *Id.* at 253. The plaintiff sued a couple of her co-workers and K-Mart for false arrest and defamation, with respondeat superior being the legal basis for asserting a claim against K-Mart. *Id*. at 254-56. The court of appeal affirmed a directed verdict in favor of K-Mart, stating: "we are unable to conclude that an employee who is participating in a scheme to steal goods from her employer is within the course and scope of her employment." *Id.* at 255. At his deposition, when Johnson was asked whether he believes theft by an employee of company property is within the scope of their employment, Johnson conceded: "It's not a part of their job to steal; no."[2] In his opposition, Johnson neither discusses nor presents evidence regarding whether the servers' alleged

[2] R. Doc. 25-2, Johnson Deposition 280:14-21.

actions in the Tuck Away scheme would further Outback's objectives. On those additional grounds, respondeat superior would not apply to this case.

Furthermore, because theft of an employer's property is not within the course and scope of an employee's job, the servers' alleged conduct and alleged theft via the Tuck Away scheme is not a covered "employment act or practice" under the LWA. Even if it Outback, through Barney, condoned the servers' alleged conduct in the Tuck Away scheme, such reverts back to the issue above that Outback would be both the perpetrator and victim, which is not possible and renders the situation as not violative of Louisiana's theft statute.

**C. Johnson Cannot Demonstrate Fraud on Part of the Servers**

Johnson does not dispute his testimony that he believes the servers proceeded in the alleged Tuck Away scheme with Barney's consent. Johnson attempts to satisfy the second element of theft by asserting the servers engaged in fraud, particularly by allegedly creating fictitious point-of-sale entries to create the reductions. Johnson's argument – and that's all it is because he admits to having no evidence showing the servers made any improper deductions or created fictitious entries – fails in the face of Barney's alleged consent and his undisputed status as a co-owner and manager of the restaurant.

Fraud is the suppression or misrepresentation of the truth to obtain an unjust advantage for one party or to cause a loss to another. *La. C.C. art. 1953*. Johnson repeatedly testified that Barney was supposedly aware and approved of the Tuck Away scheme. Along those lines, Johnson testified that Barney said he makes sure "everyone eats," which Johnson clarified that Barney ensures everyone makes money.[3] Although Outback denies Barney approved of the Tuck Away scheme and denies that such scheme even occurred, even if Johnson is correct, such means he cannot show

[3] Exhibit A, Johnson Deposition 39:18-40:18, 43:14-44:23.

the servers suppressed or misrepresented the truth, as Johnson testifies that Barney and Outback had full knowledge of what the servers were allegedly doing.

Furthermore, with Johnson admitting that he has no evidence showing deductions from any server or improperly using a comp or Tuck Away card, Johnson's argument that the servers created a false point-of-entry amounts to conjecture, which is insufficient to survive summary judgment. To deflect from his evidentiary shortcomings, Johnson attempts to shift the blame to Outback by claiming that Outback needed but failed to submit a comp policy, point-of-sale policy, manager-card policy, operating agreement, etc.[4] Johnson seems to forget his burden of proof. Outback denied the scheme even occurred. Thus, in responding to the present motion Johnson has the burden to present evidence that would create a genuine issue of fact that the servers engaged in the Tuck Away scheme, which Johnson admits he cannot do.

**D. Johnson's Lack of Evidence Results from His Lack of Foresight and Diligence**

Johnson incredulously claims that the "absence of transaction records is *not solely* attributable to Johnson," and he implies that Outback should have submitted such records.[5]

At all times since the inception of this case, Outback has denied the existence of the Tuck Away scheme.[6] The burden of proof under the LWA to establish a violation of law rests with the plaintiff. *Odeh v. City of Baton Rouge/Parish of East Baton Rouge*, 191 F. Supp. 3d 623, 628 (M.D. La. 2016) ("To prevail under § 967, the plaintiff must establish an actual violation of state law.").

In his Initial Disclosures, Johnson did not indicate or identify point of sale records as possibly being needed. Instead, the only evidence Johnson believed he would need were text

[4] R. Doc. 30, p. 15.

[5] R. Doc. 30, p. 20 (emphasis added).

[6] *See* R. Doc. 13, ¶¶22-28 denying the allegations in Johnson's Amended Complaint at R. Doc. 10, ¶¶22-28; *See also* R. Docs. 25-4 and 25-5 (Employee Relations Case) and R. Doc. 25-3 (Declaration of Brent Barney).

messages between himself and various co-workers.[7] Likewise, in his responses to Outback's discovery requests, when asked to identify all exhibits upon which he may rely as evidence in this case, as well as items he contemplates, Johnson merely pointed to text messages and other documents he produced therewith and did not refer to or even contemplate seeking out or relying on Outback's sales records.[8] In that regard, Johnson **never** propounded discovery upon Outback or otherwise sought to obtain documents concerning Outback's sales or use of comp or Tuck Away cards that would substantiate his claim that the Tuck Away scheme occurred.[9] Johnson filed this lawsuit and had the full ability to obtain records that are in Outback's exclusive possession, custody and control. Johnson failed to exercise any diligence to obtain such records. Johnson has never sought a conference with Outback to discuss discovery matters or filed a motion to compel. Thus, prior to the filing of this motion, Johnson never before suggested Outback should have produced point-of-sale records or any other records in the absence of a discovery request.

The foregoing demonstrates that Johnson has been wholly uninterested in seeking out sales information, despite Johnson being examined on the same in his deposition,[10] until his inability to satisfy his burden on summary judgment became apparent. In his opposition, Johnson quotes Rule 56(d) of the Federal Rules of Civil Procedure, but that rule does not apply. First, Johnson has not filed a motion under Rule 56(d), and so he continues to demonstrate disinterest in actually obtaining documents relating to sales and/or the use of comp and Tuck Away cards. Second, Johnson has not attempted to comply with Rule 56(d)'s evidentiary requirement, as Johnson has not submitted – nor

---

[7] Exhibit B, Johnson's Initial Disclosures.

[8] Exhibit C, Answer to Interrogatory No. 4 in Plaintiff's Responses & Objections to Defendant's First Set of Interrogatories, Response to Request No. 4 in Plaintiff's Responses & Objections to Defendant's First Requests for Production of Documents.

[9] Exhibit D, Declaration of Andrew Halverson.

[10] Johnson's deposition occurred on March 27, 2026 (*see* R. Doc. 25-2), and discovery closed on March 31, 2026 (R. Doc. 20). Johnson had not made any attempt to reopen discovery to obtain information regarding sales or use of comp or Tuck Away cards.

can he truthfully submit – an affidavit or declaration that he cannot present facts essential to justify his position.[11]

**E. Conclusion Regarding Theft**

Johnson's testimony and belief that his co-workers engaged in theft is insufficient to establish an LWA claim. With Johnson's admission that he has no evidence that would show an improper use of comp or Tuck Away cards, coupled with Johnson sitting on his hands during the discovery process and failing to pursue any information to substantiate his belief, Johnson wholly lacks the evidentiary basis needed to, not only survive summary judgment, but to prevail at a trial on the merits (although this case should not be allow to proceed any further).

Even if Johnson's testimony is somehow sufficient at this juncture to create a genuine issue of material fact, which it is not, Johnson's claim that Outback engaged in theft is logically flawed. Outback cannot be both the victim and perpetrator of theft, since the elements of theft require a showing that Outback took the property of another person. Johnson's reliance on respondeat superior fails, too, because Louisiana law disallows alleged specific intent of the servers to be imputed to Outback and because theft is not within the course and scope of an employee's employment. Finally, although Outback and Barney deny the Tuck Away scheme occurred and deny Barney consented to it, if Johnson's testimony is going to be sufficient to create a genuine issue of fact, his testimony that Barney consented to the Tuck Away scheme cannot be ignored, as that testimony would preclude a finding of fraud by the servers, since Barney and Outback would be aware of and in agreement with the scheme.

[11] Johnson's declaration at R. Doc. 29 does not contain any information required to comply with Rule 56(d).

Johnson has monumentally wasted this Court's time. Johnson cannot establish an issue of fact, let alone a genuine issue, that Outback engaged in theft. The absence of that critical element to an LWA claim requires dismissal of Johnson's claims with prejudice.

## II. Johnson Fails to Satisfy the Protected Activity or Causation Elements of LWA

Johnson's burden under the LWA is to advise the employer, Outback, of the violation of law prior to being terminated, and he must show that his termination would not have occurred but for having engaged in protected activity. *La. R.S. 23:967; Dobyns v. Univ. of Louisiana Sys.*, 2018-0811 (La. App. 1 Cir. 4/12/19), 275 So. 3d 911, 926–27. Johnson has not presented evidence that would demonstrate or establish either element of the LWA claim.

As to protected activity, Johnson's opposition alleges the following pre-termination complaints, each of which Outback disputes, and none of which is supported by any admissible evidence: (1) telling Barney of his concerns of theft in the workplace in November / December of 2023; (2) texting Barney for the corporate phone number on or about March 28, 2024; and (3) calling Outback's corporate line on April 1, 2024, to allegedly report: "that restaurant managers were permitting employees to use manager comp cards to remove food and other items from customer checks and pocket the resulting money." The foregoing does not amount to a report that Outback has engaged in theft or even that the servers were engaged in theft, as his alleged report focuses solely on the manager's permitting the servers to use comp cards. Johnson's alleged and uncorroborated complaints amount to mere disapproval of the alleged use of comp and Tuck Away cards, which is insufficient under the LWA. *See Hale v. Touro Infirmary,* 2004-0003 (La. App. 4 Cir. 11/3/04), 886 So. 2d 1210 (the employee must advise the employer of a violation of law, not merely express disagreement with a practice). Even if Johnson's testimony is viewed as advising Outback of theft by the servers, Johnson has not testified or presented any evidence that such theft

was attributable to Outback and/or that Outback was likewise engaging in theft by permitting the alleged Tuck Away scheme to proceed. Without such evidence, Johnson has not demonstrated that he engaged in protected activity.

As to causation, Johnson's testimony likewise precludes a finding of pretext. Particularly, Johnson claims he began reporting the use of comp and Tuck Away cards as early as November of 2023, six months prior to his termination, and that he called Outback's corporate hotline a month prior to his termination. Such alleged reports – albeit unsubstantiated – are too attenuated with Johnson's termination. The precipitating event to Johnson's termination was Barney's learning that Johnson instructed guests to leave him positive Google reviews and to say that the server sucked. While Johnson's opposition disputes that, he failed to present any admissible evidence with his opposition to substantiate it. Additionally, Johnson claims in the opposition Barney stated he fired Johnson due to a lack of hours. Not only does Johnson not submit any admissible evidence to support his claim, Johnson's timesheets that Outback submitted into evidence (at R. Doc. 25-6) show the contrary, as Johnson's hours remained consistent – six (6) hours a day, five (5) days – in the three months leading up to his termination, which was an increase over the three months before that. Johnson has not presented any evidence that his alleged reports about comp and Tuck Away cards bears any relationship with his termination. Accordingly, Johnson has not demonstrated Outback's legitimate non-retaliatory reason for terminating Johnson was pretextual.

## III. Conclusion

In addition to not being able to establish Outback violated Louisiana law by committing theft, Johnson failed to present evidence that would create a genuine issue of material fact that he engaged in protected activity or that Outback's stated reason for termination was pretext for

retaliation. Outback prays that this Court grants Outback's Motion for Summary Judgment and dismisses Johnson's claims with prejudice and at his cost.

Respectfully submitted:

/s/ *Andrew J. Halverson*

Andrew J. Halverson, La. Bar. No. 31184
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Lafayette, LA 70508
Telephone: (337) 769-6582
Facsimile: (337) 989-0441
Email: Andrew.Halverson@ogletree.com

and

Makala L. Graves, La. Bar. No. 40608
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
701 Poydras Street, Suite 3500
New Orleans, LA 70139
Telephone: 504-648-2612
Facsimile: 504-648-3859
Email: Makala.graves@ogletree.com

*Attorneys for Defendant OS Restaurant Services, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the above and foregoing document has this date been served to all known counsel of record in this proceeding by:

| | | | |
|---|---|---|---|
| ( ) | Hand Delivery | ( ) | Prepaid U.S. Mail |
| ( ) | Facsimile | ( ) | Federal Express |
| ( ) | E-Mail | ( X ) | CM/ECF System |

Lafayette, Louisiana, this 21st day of August, 2026.

/s/ *Andrew J. Halverson*
Andrew J. Halverson